### WARREN v. POSTAL LIFE INS. CO.

(Supreme Court, Appellate Division, Second Department.   July 31, 1914.)

1. INSURANCE (§ 146\*)—CONTRACTS—CONSTRUCTION.
   If the language of an insurance policy is plain and the transaction is free from fraud, the language governs.
   [Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 292, 294–298; Dec. Dig. § 146.\*]

2. INSURANCE (§ 152\*)—LIFE INSURANCE—STATUTES—CONSTRUCTION.
   Statutes designed to save life policies from forfeiture should receive a fair construction, and the policies should be read in connection with the statutes.
   [Ed. Note.—For other cases, see Insurance, Cent. Dig. § 312; Dec. Dig. § 152.\*]

3. INSURANCE (§ 368\*)—LIFE INSURANCE—POLICIES—STATUTE.·
   Laws 1892, c. 690, § 88, provides that when any life policy, after being in force for three years, shall lapse for nonpayment of premiums, the reserve shall be taken as a single premium, as may have been agreed, either to continue the insurance in force for so long as the single premium will purchase temporary insurance, or to purchase a paid-up policy; that if no such agreement is expressed in the application or policy, the single premium may be applied in either mode at the option of the policy holder, and that the section shall apply unless expressly waived. A life policy, issued after 1892, provided that nonpayment of premiums after three years should entitle the holder to the surrender value in extended insurance if written notice were given while the policy was in force, and that if the policy were surrendered within six months after termination, a paid-up policy should be issued.   *Held,* that where a lapse occurred after the policy had been in force more than three years, but there was no direction before lapse to apply the reserve to purchase of extended insurance, the beneficiary could recover only the amount of a paid-up policy, which might have been purchased with the surrender value; the agreement fixing which alternative should prevail in case there was no direction before lapse being valid.
   [Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 194, 936, 939; Dec. Dig. § 368.\*]

Submission of controversy between Blanche M. Warren and the Postal Life Insurance Company.   Judgment for plaintiff.

Argued before JENKS, P. J., and BURR, CARR, RICH, and STAPLETON, JJ.

James F. Lynch, of New York City, for plaintiff.

Charles C. Lockwood, of New York City (William J. Bolger, of New York City, on the brief), for defendant.

PER CURIAM.   This controversy is submitted to the court upon facts admitted.   The facts are:   On May 28, 1895, the Provident Savings Life Assurance Society of New York insured the life of William H. Warren, now deceased, in the sum of $3,000 for 20 years.   The

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

insurer issued a policy of insurance. The beneficiary named therein is the widow of the insured, and the plaintiff here. The policy remained in full force and effect until May 28, 1912; all premiums having been paid to May 28, 1911. On May 31, 1910, the defendant assumed every liability of the insurer under the policy. On June 15, 1912, the insured died. The statutory reserve value of the policy as of the date of lapse, May 28, 1912, computed according to the American Experience Table of Mortality at the rate of 4½ per cent. per annum, was $56.67, which sum, used as a single premium, could have purchased a paid policy for $855, or could have purchased temporary insurance upon the life of the insured for $3,000 (the amount specified in the policy), at the age of the insured at the time of the lapse, for a term of 314 days from May 28, 1912. On August 8, 1912, the plaintiff made a demand on the defendant, and duly offered to surrender the policy to it. The provisions of section 88 of chapter 690 of the Laws of 1892 were not specifically waived in the insured's application for the insurance, and no notice of a waiver of the provisions was written or printed in red ink on the margin of the face of the policy when issued. The plaintiff asserts that under the provisions of the laws of the state of New York and the terms of the application and policy, and upon the facts admitted, she is entitled to recover of the defendant $3,000 as extended insurance upon the life of the deceased insured. The defendant asserts that upon the same hypothesis the plaintiff's recovery will be limited to $855 as paid-up insurance upon the life of the deceased insured. It is our task to determine which of those assertions expresses the law.

The pertinent provisions of the statute, the application, and the policy must be examined and considered.

The statute, in so far as applicable, reads (chapter 690, Laws of 1892, art. 2):

"Sec. 88. Surrender Value of Lapsed or Forfeited Policies.—Whenever any policy of life insurance issued after January first, eighteen hundred and eighty, by any domestic life insurance corporation after being in force three full years, shall, by its terms, lapse or become forfeited for the nonpayment of any premium or any note given for a premium or loan made in cash on such policy as security, or of any interest on such note or loan, the reserve on such policy computed according to the American Experience Table of Mortality at the rate of four and one-half per cent. per annum shall, on demand made, with surrender of the policy within six months after such lapse or forfeiture, be taken as a single premium of life insurance at the published rates of the corporation at the time the policy was issued, and shall be applied, as shall have been agreed in the application or policy, either to continue the insurance of the policy in force at its full amount so long as such single premium will purchase temporary insurance for that amount, at the age of the insured at the time of lapse or forfeiture, or to purchase upon the same life at the same age paid-up insurance payable at the same time and under the same conditions, except as to payments of premiums, as the original policy. If no such agreement be expressed in the application or policy, such single premium may be applied in either of the modes above specified at the option of the owner of the policy, notice of such option to be contained in the demand hereinbefore required to be made to prevent the forfeiture of the policy.

"The reserve hereinbefore specified shall include dividend additions calculated at the date of the failure to make any of the payments above described

148 N.Y.S.—65

according to the American Experience Table of Mortality with interest at the rate of four and one-half per cent. per annum after deducting any indebtedness of the insured on account of any annual or semiannual or quarterly premium then due, and any loan made in cash on such policy, evidence of which is acknowledged by the insured in writing.

"The net value of the insurance given for such single premium under this section, computed by the standard of this state, shall in no case be less than two-thirds of the entire reserve computed according to the rule prescribed in this section after deducting the indebtedness as specified; but such insurance shall not participate in the profits of the corporation.

"If the reserve upon any endowment policy applied according to the provisions of this section as a single premium of temporary insurance be more than sufficient to continue the insurance to the end of the endowment term named in the policy, and if the insured survive that term, the excess shall be paid in cash at the end of such term, on the conditions on which the original policy was issued.

"This section shall not apply to any case where the provisions of the section are specifically waived in the application and notice of such waiver is written or printed in red ink on the margin of the face of the policy when issued."

The application, in so far as applicable, reads:

"And it is hereby expressly stipulated and agreed that the above application and this declaration with the policy issued thereon shall form the contract between the above-named persons and the said Provident Savings Life Assurance Society of New York, and that if  *  *  *  any omissions or neglect to make any payment, as required by the conditions of the policy; that then  *  *  *  the said policy shall become and be null and void, and all moneys which shall have been paid shall be forfeited to the society for its sole use and benefit."

The policy, in so far as applicable, reads:

"In consideration of the stipulations and agreements in the application herefor, and also upon the next page of this policy, all of which are hereby made parts of this contract.  *  *  *  Subject to the stipulations regarding payment of premiums, extrahazardous occupations, drawn under this policy by death will be incontisable [sic] except for fraud in obtaining this policy.  *  *  *  Failure to pay any premium when due will thereupon terminate this policy.  *  *  *  If, after three years from the date hereof, this policy be terminated solely by the nonpayment of any premium when due, the owner hereof will be entitled to the surrender value in extended insurance provided in the statutes of the state of New York, Laws of 1892, chapter 690, article 2, section 88, provided written application thereof shall be made while this policy is in full force and effect; otherwise, if this policy be duly surrendered within six months after such termination, a paid-up policy for an equitable amount and for the remainder of the term directly covered by the agreement on the first page hereof will be issued in exchange therefor."

The history of the events which provoked this and similar legislation in New York and in other states, and a statement of the purpose of the enactments, have been admirably written by Judge O'Rear, writing for the Kentucky Court of Appeals in United States L. Ins. Co. v. Spinks, 96 S. W. 889, 29 Ky. Law, Rep. 960, 13 L. R. A. (N. S.) 1053.

[1] If the language used by the parties in writing the contract is plain and susceptible of but one meaning, and the transaction is free from fraud or mistake, that language will control. Holly v. Metropolitan Life Ins. Co., 105 N. Y. 437, 444, 11 N. E. 507.

[2] Remedial statutes, designed to save life insurance policies from forfeiture, should receive at least a fair construction to accomplish the

design. Contracts are subject to statute law prescribing their effect. Contracts regulated by statute law and the law must be read together. Strauss v. Union Central Life Ins. Co., 170 N. Y. 349, 356, 63 N. E. 347; Taylor v. N. Y. Life Ins. Co., 209 N. Y. 29, 38, 102 N. E. 524.

[3] The plain meaning of the words used in the statute excludes any defense based upon waiver unless its provisions are specifically waived in the insured's application, and notice of that waiver is written or printed on the margin or face of the insurer's policy when issued. It is clear that the statute by its terms permits the parties to a life insurance contract to agree, in the application for insurance or in the policy itself, in the event of lapse for nonpayment of a premium, either to the continuance of the policy in force at its full amount so long as such single premium will purchase temporary insurance for that amount at the age of the insured at the time of the lapse or forfeiture, or to the issuance, upon the same life, at the same age, of a policy of paid-up insurance, payable at the same time and under the same conditions, except as to payment of premiums under the original policy. It is equally clear that it is only when no such agreement is expressed in the application or in the policy that a choice of the modes specified in the statute is available to the insured.

The parties to the contract of insurance we are considering agreed, in language admitting of no other meaning, that if the insured contemplated the nonpayment of a premium, he could, before the failure to pay the premium, elect, in writing, to continue the insurance of the policy at its full amount so long as the single premium could purchase the temporary insurance, and if that election were not made before the actual failure to pay, then the statutory alternative of purchasing paid-up insurance was the one which should be operative in satisfaction of the statute. The statute permitted the parties absolutely to exclude one of the alternatives. This they did in the case of actual nonpayment of premiums. That they contracted to act before the event in relation to a possible nonpayment of a premium did not nullify the other specific agreement. These views are not in conflict with Taylor v. N. Y. Life Insurance Co., supra. In that case the parties agreed in the contract of insurance that in case of the nonpayment of a premium subsequently due, after the policy had been in force for three full years, the policy would be continued for its full amount as provided in an incorporated table prepared in accordance with the statute, or if demand were seasonably made for a reduced amount of paid-up insurance as provided in an incorporated table prepared in accordance with the statute, paid-up insurance could be had. Court of App. Cases, Brooklyn Law Library, vol. 2945.

Judgment is directed for plaintiff against the defendant for the sum of $855, and interest from August 8, 1912, with costs.