Saul Price, J.
The plaintiff, a designated beneficiary, sues to recover the proceeds dne under a certificate of life insurance.
The deceased insured, Lionel Smith, had been an employee of the Department of Hospitals of New York City and retired on August 19, 1958. Incidental to such employment, Lionel Smith was a member of the American Federation of State, County & Municipal Employees, AFL-UIO, Local Union No. 420, and he participated in its benefit fund.
Before retirement, his union dues were paid by check-off. After his retirement and at all times prior to his death on July 25, 1962, Lionel Smith paid his dues in cash at the union office.
Pursuant to his participation in the benefit fund, Lionel Smith was issued a life insurance certificate of group life insurance “ subject to the terms of the Trust Agreement and the Plan ”.
The defendants, relying on subdivision A of article IH, Eligibility for Coverage, of the plan, have refused to remit the insurance proceeds to the plaintiff. Subdivision A of article III states: “ To be eligible for coverage one must be (a) a member in good standing of a local union participating in the Benefit Plan; (b) actively employed in any employment over which the participating AFSCME Local has jurisdiction”. The defendants assert that, since the decedent was not so employed, he was ineligible for coverage under the benefit plan at the time of his death.
The plaintiff, on the other hand, contends that article V, Retirement, of the plan is applicable. Article V provides: “ (A) Participating members who retire pursuant to the provisions of the New York City Retirement System may continue their life insurance and other types of insurance but at a straight life rate for life insurance and at a rate as may be determined by the Trustees for other types of insurance. Such rates may be adjusted annually by the Trustees without notice to the insured. ’ ’
The crux of the problem is: Did his retirement bar Lionel Smith’s eligibility for coverage under the union’s benefit plan?
“Employee welfare funds” are trust funds established for the purpose of providing employee benefits by the purchase of insurance contracts or otherwise (Insurance Law, §§ 37, 37-a). Insurance policies issued by such employee welfare fund groups are subject to the laws of insurance (1956 Atty. Gen. 187).
Generally speaking, the rules established for the construction and interpretation of written contracts apply fully to policies of insurance (Auerbach v. Maryland Gas. Co., 236 N. Y. 247; Jacobowitz v. Mutual Benefit Health S Acc. Assn., 10 A D 2d 159).
*340 The question of construction of a contract of insurance, as of the construction of contracts generally, can arise only when the language of the contract is in need of construction. If the language used by the parties in writing the contract is plain and susceptible of but one meaning, such language will control (Warren v. Postal Life Ins. Co., 163 App. Div. 638). This means that when the insurance contract is clear and precise and unambiguous in its terms there is no proper scope for a resort to the rules of construction (Mindlin v. Consolidated Taxpayers Mut. Ins. Co., 173 Misc. 961; Kasarsky v. New York Life Ins. Co., 145 Misc. 732).
In the present matter, it is not necessary to interpret the provisions of the insurance policy. The provisions of article III and article Y are compatible and clear.
When reasonably possible, operation and effect should be given to each clause of a contract of insurance (Finery Silk Stocking Co. v. Ætna Ins. Co., 227 App. Div. 39). Every clause must be considered and none of the words should be disregarded (Lee v. Guardian Life Ins. Co., 187 Misc. 221, affd. 267 App. Div. 985).
Article III defines how one may enter into plan participation — he must be a member of a participating union local and actively employed in a position within that local’s jurisdiction. Article Y explains how a member who is already covered by the plan may continue his insurance after retirement. A participating member, upon retirement, is able to continue at a rate which is to be determined by the trustees.
Thus, article III describes how one may become a participating member of the insurance plan. Article Y enables participating members to continue after retirement.
The deceased Lionel Smith was eligible for and did participate in the benefit fund during his employment by the Department of Hospitals. After his retirement, Lionel Smith continued to pay his union dues up to the date of his death. Thus, he was continually a member of union Local No. 420.
While section 161 of the Insurance Law provides that termination of the eligibility of any member insured under a group policy issued to a labor union shall entitle such member to an individual life insurance policy, provided said member applies for a policy within 31 days after termination of membership, that section is inapplicable in this instance. Section 161 pertains to the status of an interest in a group plan when an insured severs his membership in the union; in effect, it contemplates a termination of union membership. That is to be distinguished *341 from article V of the plan, which is phrased in terms of 6 6 Participating members ”.
Thus, Lionel Smith was eligible, as a participating member, to continue his insurance at the rate determined by the trustees. In the absence of proof to the contrary, it shall be deemed that the rate determined was the rate Lionel Smith paid, in view of the defendants’ failure to come forth with further proofs, and that the straight life rate described in article V is equal to the value of the certificate of life insurance, $1,000.
Judgment for the plaintiff, accordingly, with interest.