**C. F. CHILDS & CO. v. HARRIS TRUST & SAVINGS BANK, for USE of AMERICAN SURETY CO.**

Circuit Court of Appeals, Seventh Circuit.
June 27, 1928.

Rehearing Denied September 13, 1928.

No. 4007.

1. **Appeal and error** ⊂⊃997(3)—Both parties, having requested directed verdict, were bound by trial court's fact findings, and reviewing court must affirm, if any supporting evidence.

Where both parties asked for directed verdict, they were concluded by trial court's findings on facts, and reviewing court was limited to consideration of correctness of finding on law, and was required to affirm, if there was any evidence supporting it.

2. **United States** ⊂⊃91—Holder of stolen bonds had burden of proving it was lawful holder in due course for value and without notice (Negotiable Instruments Law Ill. § 52).

Under Negotiable Instruments Law Ill. § 52 (Smith-Hurd Rev. St. 1927, c. 98, § 72), defining holder in due course, subsequent holder of stolen Liberty bonds had burden of proving that it was a lawful holder by showing, among other things, that it took bonds in good faith and for value, and that at time it acquired them it had no notice of defect in title of person from whom it acquired bonds.

3. **United States** ⊂⊃91—Defendant, obtaining lost bonds by its dishonest employee's substitution thereof for bonds belonging to defendant, held not "holder in due course for value"; "negotiation" (Negotiable Instruments Law Ill. § 52).

Where Liberty bonds, lost by plaintiff bank's messenger in delivering other bonds to defendant, came into defendant's possession after it had notice of loss through the act of its dishonest employee in substituting such lost bonds for other bonds belonging to defendant, held, that defendant was not a "holder in due course for value," within Negotiable Instruments Law Ill. § 52 (Smith-Hurd Rev. St. 1927, c. 98, § 72), because there was no "negotiation" between defendant and its dishonest employee, and, even if there were a negotiation, defendant would have to adopt transaction in toto, charged with guilty knowledge of wrongdoer, who was its agent and servant.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Holder in Due Course; Negotiation.]

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Action by the Harris Trust & Savings Bank, for the use of the American Surety Company against C. F. Childs & Co. Judgment for plaintiff, and defendant brings error. Affirmed.

Louis L. Dent, of Chicago, Ill., for plaintiff in error.

27 F.(2d)—40½

Frederic F. & John V. Norcross and Henry Fitts, all of Chicago, Ill., for defendant in error.

Before ALSCHULER and ANDERSON, Circuit Judges, and CARPENTER, District Judge.

CARPENTER, District Judge. The action before the trial court and a jury was in trover, for the recovery of the value of 23 United States Victory 4¾ per cent. bonds, of the par value of $1,000 each, maturity date May 20, 1923.

[1] When the evidence was all presented, attorneys for both parties asked for a directed verdict. "This was necessarily a request that the court find the facts, and the parties are therefore concluded by the finding made by the court, upon which the resulting instruction of law was given. The facts having been thus submitted to the court, we are limited in reviewing its action to the consideration of the correctness of the finding on the law, and must affirm if there be any evidence in support thereof." Beuttell v. Magone, 157 U. S. 154, 15 S. Ct. 556, 39 L. Ed. 654; Buckbee v. P. Hohenadel, Jr., Co. (C. C. A.) 224 F. 14, L. R. A. 1916C, 1001.

The trial court instructed the jury to return a verdict for the plaintiff for the full amount of its claim, with interest. Plaintiff in error assigns 12 grounds for reversal. One assignment could have covered them all, and, none being directed to the reception or exclusion of evidence, the sole question before us is whether "on the law" there was any evidence to support the verdict of the jury, as directed by the court.

The record discloses that on the morning of September 6, 1921, seven or eight packages of bonds were given to three messengers of the Harris Trust & Savings Bank, defendant in error (hereinafter called Harris), for delivery to customers. The packages were placed in a gun metal case (to which one messenger was handcuffed) in the order of the route which the messengers were to take, the bonds in each package being laid out flat and held together by clips. The package last to be delivered was for the Federal Reserve Bank and was placed on the bottom. Immediately above this, to be delivered next to the last, was placed a package containing 23 $1,000 Victory bonds, which are the subject-matter of this suit, and 4 $500 Victory bonds, this package being addressed to the Bankers' Trust Company of New York, for delivery to its correspondent in

Chicago, the Illinois Trust & Savings Bank. On top of this package, to be delivered third from the last, was placed another package containing $25,000 of Victory bonds intended for C. F. Childs & Co., plaintiff in error (hereinafter called Childs).

After making the first four or five deliveries, the messengers came to the window of Childs' receiving teller, and on opening the gun metal case found the package for Childs in its proper place. They passed this package, and, as they believed, this package alone, through the window to the teller, but before leaving the office discovered that the package next below, instead of being the Bankers' Trust Company package, was the bottom package directed to the Federal Reserve Bank, and that the Bankers' Trust Company package was not in the case. They then inquired of Childs' teller, who denied having received the missing package.

Harris notified Childs of the loss on the same day verbally, and on the next day, September 7th, sent out a notice in writing of the loss to banks and bond dealers in Chicago and elsewhere, giving the numbers and denominations of the bonds. Childs received a copy of this notice, and also of notices of September 18th and October 1st, giving corrected lists.

On August 17, 1922, an agent of the American Surety Company informed Childs' New York office that on June 12, 1922, it had sold and delivered to Chas. E. Quincey & Co. of New York 23 of Harris' missing bonds. On investigation by Childs, it developed that these bonds were included in a large shipment of Victory bonds made by it on June 10, 1922, from its Chicago to its New York office; that when those bonds were assembled a list of them was made which did not include Harris' missing bonds, but before the package left Childs' Chicago office, which is its principal office, an employé abstracted therefrom 23 $1,000 Victory bonds belonging to Childs, and substituted for them Harris' missing 23 $1,000 bonds. When the package was received by Childs' New York office, the bonds were not checked by their numbers with the list made up in the Chicago office, but were merely checked as to amount, and on June 12th Harris' missing 23 bonds were included in a sale of $200,000 par value of Victory bonds by Childs' New York office to Chas. E. Quincey & Co., and were sold for $23,170.20 plus accrued interest of $537.15 a total of $23,707.35. Childs took a receipt from Quincey & Co. on delivery of the bonds in which Harris' 23 missing bonds were listed by their numbers.

The controlling question in this case is whether Childs was a holder of the bonds in due course. Section 52 of the Negotiable Instruments Law of Illinois (Smith-Hurd Rev. St. 1927, c. 98, § 72), relied upon by plaintiff in error reads:

"A holder in due course is a holder who has taken the instrument under the following conditions:

"1. That the instrument is complete and regular upon its face.

"2. That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact.

"3. That he took it in good faith and for value.

"4. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

[2] These bonds were stolen property which rendered the title defective in subsequent negotiations, and the burden was therefore upon Childs to prove that it was a lawful holder. To do this it had to show, among other things, that it took the bonds in good faith and for value, and that at the time it acquired them it had no notice of defect in the title of the person from whom it acquired. Childs failed to bear this burden.

[3] Childs claims that it gave value for the bonds, because it exchanged therefor an equal number of its own bonds of like denomination and value, and by accepting Harris' missing bond it has discharged its right to restoration of its own stolen bonds, and also that, when the bonds came into its possession and it thereafter sold them, it did not have actual notice of any defect in the title of the person *negotiating* them.

The circumstances of this case preclude the acceptance of such a theory. It is equivalent to saying that, though Childs would have been obligated to return Harris' missing bonds if a thief had left them on its premises without accomplishing an intended theft from it, yet the accomplishment of the theft from it gives it the right to make itself whole out of the bonds stolen from Harris, and further that, though it had notice at the time the bonds were stolen from Harris, it can take advantage of the carelessness, or worse, of an employé to relieve it of actual knowledge at a later date.

Childs is acquitted of any connection with the substitution effected by the thief employé, but when it seeks to benefit by the thief's act it must adopt that act as its own, and say the thief intended a sale by him to

Childs for which he, acting for Childs, paid himself with 23 of Childs' bonds. By this ratification of the thief's act Childs puts itself in the position of having authorized the transaction with the thief's guilty knowledge, and cannot then say it is a purchaser for value in good faith.

Childs received repeated notice at the time the bonds were stolen from Harris, both verbal and written, and had this knowledge at the time it acquired the bonds. Had the New York office checked the numbers of the bonds it received from the Chicago office with the accompanying list, it would have learned then of the substitution, and is therefore charged with this knowledge. The receipt taken from Quincey & Co. gave a correct list of Harris' 23 bonds. The evidence does not show who made out the list, but in ordinary business practice it would be assumed that Childs' New York office did, and sent it with the bonds for Quincey & Co.'s receipt, but this would be immaterial. A check of the receipt would have shown the situation.

No citation of authorities is needed on the proposition that, if Childs knew of its thief employé's part in the drama, it was bound to make full recompense to Harris. Childs' claim as holder for value under the Illinois Negotiable Instruments Law is not sound, because there was no *negotiation* between Childs and its thief employé, and because, if Childs chooses to treat it as a *negotiation* (ex parte to say the least), it must adopt the transaction in toto, charged with the guilty knowledge of the wrongdoer, its agent and servant.

There appears in the record, not only some evidence to support the directed verdict of the trial judge "on the law," but an abundance of it. The judgment will be affirmed, with costs, against the plaintiff in error.

Affirmed.