MASONIC ACCIDENT INSURANCE COMPANY *v.* JACKSON.

[No. 25,711. Filed January 23, 1929.]

*Orbison, Zechiel & Orbison,* for appellant.

*Oscar C. Hagemier, Burke G. Slaymaker* and *Lawrence B. Moore,* for appellee.

WILLOUGHBY, J.—This was an action brought on an insurance policy by Leona Jackson, appellee, who was the beneficiary. It appears from the facts alleged in the complaint that the defendant is an insurance corporation duly organized under and pursuant to the laws of the State of Massachusetts, and is now and at all times has been engaged in insuring persons against loss by accident and accidental death.

On June 25, 1919, under the corporate name of Masonic Mutual Accident Insurance Company, appellant executed to one Joseph L. Jackson, its policy whereby the company insured said Jackson beginning at 12 o'clock noon on that day and to continue thereafter so long as said Joseph L. Jackson, should pay a quarterly premium of $6. A copy of said policy is filed and made a part of the complaint. That said defendant promised, in the event of bodily injuries resulting in the death of said Joseph L. Jackson, caused solely by accidental means, to pay this plaintiff, the wife of said Jackson, the sum of $1,200, plus a yearly increased accumulation of ten per cent. of said amount for each full year that the said policy was maintained continuously in force until July 1, 1923. That said policy continued and remained in force from its date to and upon April 29, 1923. That

on April 29, 1923, and while said policy was in full force and effect, the said Joseph L. Jackson received a bodily injury caused solely by accidental means, to wit: that while riding as a passenger in an aeroplane, the pilot of said aeroplane, one Ralph Hunting, lost control of said aeroplane and thereby accidentally allowed the same to crash to the earth, and that the violence of the contact of the said aeroplane with the earth caused a part of said aeroplane accidentally to forcefully, and with great violence, strike the head of said Jackson, and then and there to leave a visible contusion upon the head of him, the said Jackson, which said injury caused concussion of the brain, from which said Jackson died the following day after said accident and injury. That from said 25th day of June, 1919, continuously to, and at the time of the death of said Joseph L. Jackson, plaintiff was his wife. That the said Joseph L. Jackson and this plaintiff each duly performed all of the conditions of the said policy to be by them performed. That said plaintiff gave immediate notice of said injury and death to said defendant and that said plaintiff furnished to defendant due proof of loss as required by said policy as soon as blanks were furnished her by said defendant. That, more than sixty days before the commencement of this action, the plaintiff filed proof of loss in accordance with the requirements of said policy, but the defendant has not paid the sum due under said policy and has refused to pay said sum. That on June 19, 1923, the defendant, by its letter in writing to this plaintiff, denied any liability to plaintiff under said policy that of the false claim and statement of defendant, and because said death was not one insured against by said policy, and thereby defendants waived proofs of death and any defects or omissions in the notice of death and proofs of death theretofore furnished by plaintiff to defendant. Plaintiff says that the said death of said Joseph L. Jackson, was not caused

or contributed to by the said Jackson, wholly or in part, by the use of intoxicating liquors, or narcotics, or intentionally, or while the said Jackson was engaged in aviation or ballooning, or by suicide or any attempt thereat, . . . or by any other means whatsoever excepted by said policy.

It is further alleged in said complaint that on June 25, 1919, the defendant was engaged in said business of insurance by and under the corporate name of Masonic Mutual Accident Insurance Company; that, when this action was commenced, the defendant was engaged in said insurance business by the name and style of "Masonic Accident Insurance Company"; that, by due form of law, said defendant has changed its corporate name to Monarch Accident Insurance Company, since this action was commenced. And that the corporate name of said defendant now is Monarch Accident Insurance Company. That said Masonic Mutual Accident Insurance Company, said Masonic Accident Insurance Company and said Monarch Accident Insurance Company are one and the same corporation.

A demurrer was filed, alleging that the complaint does not state facts sufficient to constitute a cause of action. This demurrer was overruled, to which ruling the appellant at the time excepted, and refusing to plead further, final judgment was rendered against the appellant for the amount due on the policy, with interest and costs. From such judgment, this appeal was taken.

The only error assigned is that the court erred in overruling the demurrer to said complaint. The only argument made in favor of said demurrer was that the company was not liable on account of a clause in said policy as follows: "Indemnity under this policy shall not be payable for any death or disability that may be caused or contributed to, wholly or in part by any of the following causes: the use of intoxicating liquors or narcotics

by the insured; intentional injuries; while engaged in aviation or ballooning, suicide or any attempt thereat while sane or insane; . . ."

The appellee claims that the company cannot avoid payment of the policy on the alleged ground that the insured was engaged in aviation.

The new Standard Dictionary defines "aviation" as the art of flying, especially the management of aeroplanes.

In the case of *Benefit Assn. Ry. Employees* v. *Hayden* (1927), 175 Ark. 565, 299 S. W. 995, it was held that one killed while a passenger in an aeroplane was not engaged in aeronautics. The insured was killed on October 17, 1926, at Stuttgart, Arkansas, in an aeroplane accident. The facts in relation to the accident show that Richard Schillberg was operating an aeroplane at a rice carnival or rice fair at Stuttgart, Arkansas, and was charging passengers $2.50 for each trip on which they rode with him. Some time during the day, Paul Trotter, the insured, took an aeroplane trip with Schillberg, riding as a passenger and paid the usual fee or fare therefor. Later in the day, as he stood near the aeroplane, the pilot of the aeroplane, in soliciting passengers for another trip, saw Paul Trotter, and asked him if he did not want to take another ride. On this occasion, Paul Trotter accepted this invitation to become a passenger to ride for a second time, and the second flight was made. The second flight was upon the same condition of payment as the first flight, but it is not known by the parties whether the payment was made on either occasion before ascending or after alighting from the aeroplane. On the occasion of the second flight, the pilot of the machine attempted to perform some "stunts," and, in doing so, lost control of his machine, when perhaps not more than 300 feet above the ground, and the aeroplane fell, killing Trotter, and seriously injuring Schillberg. Prior to the time of taking

out insurance, Trotter had been on one or two "plane" trips. The policy sued on contained this clause: "This policy does not cover disability or fatal injury received by the insured ... while engaged in aeronautics or under-water navigation." The company denied liability by virtue of this clause. At the trial from which this appeal was taken, the insurance company requested the court to find the fact to be that the insured received his fatal injury while engaged in aeronautics, and that death while so engaged was a risk not assumed, but expressly excepted by the policy. The court declined to make that finding, but the court found that the occupation of Paul Trotter was that of a telegraph operator, and that he received his fatal injury while riding in an aeroplane as a passenger; that riding as a passenger in an aeroplane does not constitute an exception or excepted risk, under the terms of the policy of insurance sued upon, but the phrase "engaged in aeronautics" implies that the risk excepted it for the insured to have taken part in the operation of the aeroplane as an occupation or otherwise, and that merely riding as a passenger therein does not come within the exception of the policy. Judgment was rendered against the insurance company for the amount of the policy with penalty and attorney's fee. "The appellee insists that the phrase 'engaged in aeronatics' should be strictly construed, as it constitutes an exemption from the general liability assumed by the company, ... and that it means active co-operation or taking part in the aeronautical enterprise, resulting in the death of the insured. Appellee contrasts the use of the words 'engaged in,' quoted above, with language employed in section 5 of the policy, providing for double indemnity in certain cases, one of these being for an injury sustained by the insured 'while *riding* as a passenger in a passenger elevator,' and another provision in the same section for double indemnity for an injury sustained by the insured

while *riding* as a passenger of a common carrier, and also with an exception from liability contained in section (f) 'while engaged in military or naval service during the time of war.' It is insisted by the appellee that the words 'engaged in' should be construed as having the same meaning in each of the instances where they were employed, and that the proper construction of those words is that actual employment or participation was contemplated, and that, if merely riding as a passenger in an aeronautical device was intended, language should have been employed which did more than inhibit one from engaging in that business. We do not review the cases cited by counsel for appellant, as it is thought by the majority of the court that the instant case is ruled by the decisions of this court in the cases of: *Sovereign Camp W. O. W.* v. *Compton*, 140 Ark. 313, 215 S. W. 672; *Miller* v. *Illinois Bankers' Life Assn.*, 138 Ark. 442, 212 S. W. 310, 7 A. L. R. 378; *Benham* v. *American Central Life Ins. Co.*, 140 Ark. 612, 217 S. W. 462; and *Nutt* v. *Security Life Ins. Co.*, 142 Ark. 29, 218 S. W. 675."

In the case of *Benham* v. *American Central Life Ins. Co.* (1919), 140 Ark. 612, 217 S. W. 462, the facts were that Benham, the insured, enlisted in the aviation branch of the military service of the United States on February 11, 1918, at which time the United States was at war with Germany, and while still in the aviation service, and during the continuance of the war, the insured died from influenza. The policy there sued on contained the following exemption from liability: "Death while engaged in military or naval service in time of war, or in consequence of such service, shall render the company liable only for the reserve under this policy, unless the company's permission to engage in such service shall have been obtained and such extra premium or premiums as the company may require shall have been paid." Permission of the insurance company for the insured's

enlistment had not been obtained, nor had the insured paid the extra premium, but the court held that the company was liable for the full face value of the policy, and, in so holding, it was there said: "The words in the restricted clause now under consideration mean something more than death to the insured during the period of time he was in military service of the United States. The word 'engaged' denotes action. It means to take part in. To illustrate: A servant injured while taking part in the operation of a train means that he must be injured while assisting or taking part in the operation of the train. An officer engaged in the discharge of the duties of his office is one performing the duties of his office. So here the words 'death while engaged in military service in time of war,' means death while doing, performing, or taking part in some military service in time of war. In other words, it must be death caused by performing some duty in the military service. That is to say, in order to exempt the company from liability, the death must have been caused while the insured was doing something connected with the military service, in contradistinction to death while in the service due to causes entirely or wholly unconnected with such service. This construction, we think, would be according to the natural and ordinary meaning of the words. By the use of the word 'engaged' it must have been intended that some activity in the service should have caused the death in contradistinction to merely a period of time while the insured was in the service. This view is strengthened when we consider the words following. The words, 'or in consequence of such service,' relate to the word 'death.' So that death in 'consequence of such service' means death resulting from some act of the insured connected with the service whether such death occurred during the period of his services or afterwards."

The doctrine of that case was reaffirmed in the later

case, *Nutt* v. *Security Life Ins. Co.* (1920), 142 Ark. 29, 218 S. W. 675. The decision of this court in the Benham case, *supra*, was approved by the Supreme Court of Oklahoma, in the case of *Barnett* v. *Merchants' Life Ins. Co.* (1922), 87 Okla. 42, 208 Pac. 271; by the Supreme Court of Iowa, in the case of *Boatwright* v. *American Life Ins. Co.* (1920), 191 Iowa 253, 180 N. W. 321, 11 A. L. R. 1085; and by the Kansas City Court of Appeals, in the case of *Long* v. *St. Joseph Life Ins. Co.* (1920), 225 S. W. (Mo.) 106, which case was affirmed on appeal to the Supreme Court of that state, 248 S. W. 923. It is therefore the opinion of the majority of the court that the insured was not "engaged in aeronautics" within the meaning of the clause above quoted.

The word "engaged" means to carry on, to conduct, to employ oneself, and does not relate to a single act. To say that one is engaged in a thing is to say that the act is continuous. See *Roberts* v. *State* (1890), 26 Fla. 360, 7 So. 861; *Harris* v. *State* (1873), 50 Ala. 127; *Nashville, etc., R. Co.* v. *City of Attalla* (1897), 118 Ala. 362, 24 So. 450; *Graves* v. *Knights of Maccabees* (1908), 128 App. Div. 660, 112 N. Y. Supp. 948; *State* v. *Roberson* (1904), 136 N. C. 587, 48 S. E. 595; *People* v. *Bright* (1911), 203 N. Y. 73, 96 N. E. 362, Ann. Cas. 1913A 771; *Semple* v. *Schwartz* (1908), 130 Mo. App. 65, 109 S. W. 633.

In *Phoenix Accident, etc., Assn.* v. *Lathrop* (1907), 41 Ind. App. 141, 81 N. E. 227, it is held that an insured who was killed while walking on the public highway over a railroad crossing was not killed in the consequence of walking on the roadbed of a railroad, within the inhibition of an accident insurance policy.

To say that one is "engaged" in an occupation signifies much more than the doing of one act in the line of such occupation. *State* v. *Roberson, supra; White* v. *Sikes* (1907), 129 Ga. 508, 59 S. E. 228, 121 Am. St. 228.

In the case of *Guiltinan* v. *Metropolitan Life Ins. Co.*

(1897), 69 Vt. 469, 38 Atl. 315, the insured, in an application for life insurance, was asked whether he ■ was, directly or indirectly, engaged, or had ever been engaged, in the sale of intoxicating liquor, and he answered in the negative. It turned out that, while working about a hotel, he occasionally sold liquor over the bar at the hotel. The trial court instructed the jury that if the assured "did occasionally, out of his ordinary line of duties, by direction of his employer, or otherwise, furnish the guests with intoxicating liquors and take pay for them he was not engaged in such sale within the meaning of the contract." And, of this instruction, the Supreme Court of Vermont said: "This instruction was correct. The word 'engaged' as used in the application, means 'occupied,' and does not relate to an occasional act outside of a regular employment." Thus, it may be observed that the phrase "engaged in aviation" denotes and suggests permanency, or continuity, or frequency of action, and does not aptly describe a single isolated act of riding in an aeroplane as a passenger.

It is elementary in the construction of insurance policies that where insurance contracts are so drawn as to be ambiguous or require interpretation or are ■ fairly susceptible of two different constructions so that reasonably intelligent men on reading them would honestly differ as to their meaning, the courts will adopt that construction most favorable to the insured. *Fidelity, etc., Co.* v. *Blount Plow Works* (1922), 78 Ind. App. 529, 136 N. E. 559; *Standard Life & Accident Ins. Co.* v. *Martin, Admr.* (1893), 133 Ind. 376, 33 N. E. 105; *Northwestern, etc., Ins. Co.* v. *Hazelett* (1886), 105 Ind. 212, 4 N. E. 582, 55 Am. Rep. 192.

Since the policy in the instant case insures generally by clear and comprehensive language against death from

bodily injuries by accidental means, of which there are visible marks or wounds on the body, liability for such a death will not be destroyed by language of exception, unless such exception shall be clear, and free from reasonable doubt. If a policy be ambiguous, the doubt will be resolved against the insurer. *Maxwell* v. *Springfield, etc., Ins. Co.* (1920), 73 Ind. App. 251, 125 N. E. 645; *Hessler, Admr.,* v. *Federal Casualty Co.* (1921), 190 Ind. 68, 129 N. E. 325, 14 A. L. R. 1329.

An insurance policy should be so construed as to effectuate indemnification to the insured or his dependent beneficiary against loss, rather than to defeat it. *Crowell* v. *Maryland Motor Ins. Co.* (1914), 169 N. C. 35, 85 S. E. 37, Ann. Cas. 1917D 50.

Where any reasonable construction can be placed on a policy that will prevent the defeat of the insured's indemnification for a loss covered by general language, that construction will be given. *Insurance Company of North America* v. *O'Bannon* (1914), 170 S. W. (Tex. Civ. App.) 1055.

It is the duty of the court to give such construction to an accident policy, if the language fairly admits, as will make it of some substantial value and carry out the intention expressed therein that liability is incurred where death occurs from accidental injury. *Fidelity & Casualty Co.* v. *Meyer* (1912), 106 Ark. 91, 152 S. W. 995, 44 L. R. A. (N. S.) 493.

The court did not err in overruling the demurrer to the complaint. Judgment affirmed.