## GITS v. NEW YORK LIFE INS. CO.

Circuit Court of Appeals, Seventh Circuit.
April 11, 1929.

Rehearing Denied May 27, 1929.

No. 4063.

Daniel M. Dever, of Chicago, Ill. (Daniel V. Gallery, of Chicago, Ill., of counsel), for appellant.

Samuel Topliff and Homer H. Cooper, both of Chicago, Ill., for appellee.

Before ALSCHULER, PAGE, and ANDERSON, Circuit Judges.

ALSCHULER, Circuit Judge. At the threshold lies appellee's contention that insured's death resulted "from engaging in submarine or aeronautic operations," and that therefore liability for the double indemnity did not arise. The solution of this question depends on what is meant in the policy by the words "engaging in aeronautic operations," and, specifically, whether a casual passenger in an airplane is "engaging in aeronautic operations."

The very words suggest to us the quality of continuity and frequency, as well as some degree of participation in the use of the instrumentality. It is readily conceivable that an insurer might wish to except from such liability one who habitually, and as an occupation, participates in the operation of such an instrumentality, by declining to assume any liability while the insured is so engaged, and yet be willing to assume liability for the occasional hazard which would attach in the case of a passenger. If the inhibition were against engaging in maritime or seafaring operations, it would hardly be contended that an occasional passenger on an ocean steamer was excepted; or if applied to "engaging in railroading operations," that the indemnity would be suspended while one was riding as a passenger on a train. Can the audience at a theater, or opera, or movie show be properly said to be "engaged in dramatic, or operatic, or cinematographic operations"? We think the question answers itself negatively, and can see no reason for a different conclusion where the subject is "aeronautic operations."

The decisions are not entirely harmonious upon situations more or less similar. A rather striking case is that of Masonic Acc. Ins. Co. v. Jackson, decided by the Supreme Court of Indiana January 23, 1929, and reported in 164 N. E. 628. The policy there excepted liability if the death occurred "while engaged in aviation or ballooning." Deceased met his death as the result of a mishap to an airplane while he was a passenger in it, and it was contended for the company that he was "engaged in aviation." The Indiana circuit court held that a passenger riding in an airplane was not within the exception, and awarded judgment against the insurer. On appeal to the Appellate Court it was held that riding as a passenger was "engaging in aviation," within the purview of the exception in the policy, and the judgment was reversed. Masonic Acc. Ins. Co. v. Jackson (Ind. App.) 147 N. E. 156. After the oral argument of the cause in this court the opinion of the Supreme Court of Indiana was handed down, supra, wherein the judgment of the circuit court was affirmed.

With the reasoning of the Indiana Su-

preme Court we are entirely in accord, and for elaborate discussion of the proposition and review of the authorities thereon we refer to that opinion, and refrain from further discussion of the question except to say that the language in the instant case is less favorable to the insurer than it was there. Here the exception is while "engaged in aeronautic *operations*"; there the word "operations" was not present, the exception being "while engaged in aviation." Surely the employment of the word *operations* tends more certainly to indicate an intended continuous and occupational relation.

While we are satisfied that the conclusion upon that proposition should be the same here as that reached by the Supreme Court of Indiana in the Jackson Case, enough has been said to indicate that, at the very best, the intent and scope of the clause is ambiguous and involved in doubt. The ambiguity and doubt are emphasized by the facility with which the insurer could have included passengers within the exception, were it so intended. It is elementary that in insurance policies ambiguous and doubtful language is taken most strongly against the insurer, and we have no hesitancy in concluding that, within the purview of the policy, the death of this passenger did not occur while he was "engaged in aeronautic operations."

Appellee further contends that the evidence shows insured's death to have resulted from self-destruction, and that, under the policy, double indemnity is not recoverable.

That deceased came to his death from "bodily injury effected solely through external, violent * * * cause" and "independently of all other causes," the oral evidence on the trial abundantly establishes. By the terms of the policy, before recovery under the policy is permissible, it must further appear that the death was the result of accident. But when a death from external, violent means is shown, to which no disease or bodily infirmity contributed, then it must of necessity have resulted either from accidental means or from self-destruction. The evidence of the wife and daughter, showing them to have been on a pleasure trip, and his evidently happy frame of mind as he proposed and undertook the thrilling diversion of an airplane ride, affords some evidence tending to support the conclusion of accident. No eyewitness of the actual manner of the happening testified. The only evidence in the record which may be said to have tendency to support the theory of suicide is that afforded by one of the clippings which appeared attached to the proof of death.

Passing the contention here urgently put forth in briefs and argument, but of which the record affords no evidence, that the clippings were not attached to the proof of death, nor referred to therein when the proof was submitted to the company, and assuming that under such decisions as Insurance Co. v. Newton, 89 U. S. 32, and Jensen v. Continental Life Ins. Co. (C. C. A.) 28 F.(2d) 545, they are, if unconditionally submitted by the beneficiary as part of the proof of death, competent evidence upon the issues of the case, we give them some consideration.

From the first of the clippings above set forth inference might be drawn that the death was the result of self-destruction; but even this would not be conclusive, for against it might be considered the conditions and facts, as testified by the wife and daughter, and the question of self-destruction would then be for the jury. New York Life Insurance Co. v. Ross (C. C. A.) 30 F.(2d) 80. But the second clipping as set forth is at least as persuasive of the conclusion of accidental death as the first is suggestive of self-destruction. It would appear from this account that shortly after the airplane arose it became unmanageable, and that the deceased, being suddenly confronted with the alternative of remaining in his place until the airplane crashed to the ground, or taking the chance of leaving it, chose the latter course and jumped; and while from the outcome it appears probable that had he stuck to the plane he might have escaped with slight injury or none, his decision to jump would not stamp his resultant death as suicide or self-destruction.

But, says appellee, the question of self-destruction was an issue of fact, and since at the close of the evidence for appellant each party presented a motion for a directed verdict, the granting of appellee's motion conclusively determined the question of self-destruction in appellee's favor, under the rule stated by this court. Childs & Co. v. Harris Trust & Savings Bank (C. C. A.) 27 F.(2d) 633.

But was there, by each party, a motion for a directed verdict as respects the question of suicide? It seems to us that from the record, as set forth in the statement of facts, the motions for a directed verdict were intended to have, and did have, reference only to the question of the construction of the double indemnity clause. If this was held to exclude liability for death of a passenger while riding in an airplane, then nonliability followed regardless of whether or not the death was occasioned by suicide.

Appellee, by the very terms of its motion and in presenting it to the district court, expressly refrained from submitting any question of fact, such as suicide, by reserving the right to present evidence in case the court declined to grant its motion for a directed verdict. It seems evident to us from this record that the only question which the motion submitted to the court, and the only question which the court decided, was that of the construction of the excepting clause; and, this being so, appellee cannot now have the advantage of a submission which it very evidently did not intend to make and did not make.

Many other questions were raised and argued which we do not deem it essential to consider.

Holding as we do that this clause respecting engaging in aeronautic operations does not embrace a passenger riding in an airplane, and that the question of self-destruction was for the jury, it follows that the judgment must be, and it hereby is, reversed, and the cause remanded for another trial.