## GOLDSMITH v. NEW YORK LIFE INS. CO.
### No. 9706.

Circuit Court of Appeals, Eighth Circuit.

Feb. 20, 1934.

STONE, Circuit Judge, dissenting.

Ben L. Shifrin, of St. Louis, Mo. (Perry Post Taylor and Taylor, Mayer & Shifrin, all of St. Louis, Mo., on the brief), for appellant.

James C. Jones, Jr., of St. Louis, Mo. (James C. Jones and Lon O. Hocker, both of St. Louis, Mo., and Louis H. Cooke, of New York City, and Jones, Hocker, Sullivan, Gladney & Reeder, of St. Louis, Mo., on the brief), for appellee.

Before STONE, SANBORN, and VAN VALKENBURGH, Circuit Judges.

SANBORN, Circuit Judge.

On March 19, 1932, Bernie M. Goldsmith, a passenger in an airplane, died as the result of a crash of the plane in which he was riding. He had two life policies in the New York Life Insurance Company, one for $25,000 and the other for $5,000, which provided double indemnity for accidental death, both being payable to the company as trustee for the benefit of the appellant, the insured's wife, in accordance with the terms of trust agreements entered into by the insured and the company in December, 1925. The company admitted liability for the face of the policies, but denied liability under the double indemnity clause, and this suit was brought to require the company to pay itself, as trustee, double the face of the policies. The bill of complaint set up the policies, the death of the insured, the furnishing of due proofs of death, and the company's denial of liability for double indemnity. The company moved to dismiss for want of equity. From a decree dismissing the bill, this appeal is taken.

The bill shows that, by the terms of the policies, double indemnity was not payable if the insured's death resulted "from engaging, as a passenger or otherwise, in submarine or aeronautic operations." The court below was of the opinion that this language excluded from double indemnity coverage accidental death resulting from riding in an airplane as a passenger. The appellant contends that the accidental death of the insured was covered by the double indemnity clause. So far as we are advised, in no reported case have the courts construed the identical language used in these policies.

The appellant's contention is that at best it is doubtful whether it was intended, by the language used, to exclude from double indemnity benefits the accidental death of a casual passenger traveling in an airplane engaged in transporting passengers for hire, and that, under the familiar rule that the language of a policy, if ambiguous, will be construed against the insurer, the company should be required to pay double indemnity.

We shall review briefly some of the cases for the purpose of indicating what the attitude of the courts has been with reference to clauses limiting coverage in case of death resulting from airplane accidents.

Bew v. Travelers' Ins. Co. (1921) 95 N. J. Law, 533, 112 A. 859, 14 A. L. R. 983. The policy excluded "injuries * * * sustained * * * while participating in or in consequence of having participated in aeronautics." The insured was a passenger in an airplane when killed. His death was held to be excluded from the coverage.

Pittman et al. v. Lamar Life Ins. Co. (C. C. A. 5, 1927) 17 F.(2d) 370, certiorari denied 274 U. S. 750, 47 S. Ct. 764, 71 L. Ed. 1331. The policy excluded death "while participating or as a result of participation in any submarine or aeronautic expedition or activity, either as a passenger or otherwise." The insured, who was the part owner of an airplane, was killed by the moving propeller blade as he passed near the front of the plane after landing. He had just returned from a flight during which his partner operated the plane. It was held that he was killed while "participating in an aeronautic activity."

Benefit Ass'n of Railway Employees v. Hayden (1927) 175 Ark. 565, 299 S. W. 995, 57 A. L. R. 622. The policy excluded from coverage fatal injury "while engaged in aeronautics or under-water navigation." The insured was killed while a passenger in an airplane. It was held that his death was covered by the policy; that the word "engaged" in its ordinary sense means something more than taking a trip as a passenger.

Masonic Acc. Ins. Co. v. Jackson (1929) 200 Ind. 472, 164 N. E. 628, 61 A. L. R. 840. The policy excluded death "while engaged in aviation or ballooning." The insured was killed while a passenger in an airplane. The court followed the Hayden Case and held that the insured's death while a passenger was covered by the policy.

Peters v. Prudential Ins. Co. of America (1929), 133 Misc. 780, 233 N. Y. S. 500. The policy excluded death "from having been engaged in aviation or submarine operations or military or naval service in time of war." The insured was killed while a passenger in an airplane. The language was held to be ambiguous because it might mean aviation in time of war, and, further, because the words "engaged in aviation" convey "something more than occasional participation" in aviation. Therefore the insured's death was held to be covered by the policy.

Gits v. New York Life Ins. Co. (C. C. A. 7, 1929) 32 F.(2d) 7, 9. The policy excluded from double indemnity death "from engaging in submarine or aeronautic operations." The insured was a passenger in an airplane when killed. The court followed Masonic Acc. Ins. Co. v. Jackson, supra, saying [page 10 of 32 F.(2d)]: " * * * The intent and scope of the clause is ambiguous and involved in doubt. The ambiguity and doubt are emphasized by the facility with which the insurer could have included passengers within the exception, were it so intended."

Gibbs v. Equitable Life Assur. Soc. of United States (1931) 256 N. Y. 208, 176 N. E. 144. The policy excluded from double indemnity benefits death resulting from "engaging as a passenger or otherwise in submarine or aeronautic expeditions." The insured was killed while a passenger in a common carrier airplane. It was contended that he was not engaged in an aeronautic expedition, and that his death called for double indemnity. The court held that the policy, which was issued in 1924, must be construed in the light of conditions then prevailing, and that it was intended to exclude from double indemnity death from riding in an airplane as a passenger.

Head et al. v. New York Life Ins. Co. (C. C. A. 10, 1930) 43 F.(2d) 517. The policy excluded from double indemnity "death * * * from participation as a passenger or otherwise in aviation or aeronautics." It was held that a passenger in an airplane flying in the air participates in aeronautics. The court discusses the difference in meaning of the words "participate" and "engage" and reaches the conclusion that the double indemnity clause of the policy did not cover the death of the insured while a passenger in the plane.

First Nat. Bank of Chattanooga v. Phœnix Mut. Life Ins. Co. (C. C. A. 6, 1933) 62 F.(2d) 681. The policy excluded from double indemnity benefits death "from participation in aeronautic ¹ * * operations." The insured was president of an airplane company engaged in operating planes at Chattanooga, Tenn., and was actively engaged in managing its affairs. He had a permit to become a student aviator. In making a trip in one of his company's planes to Florida to visit his wife, accompanied by a pilot, the plane crashed, and he was killed. Although not acting as pilot on the trip, he was more than a passive participant in the venture. It was held that his beneficiary could not recover double indemnity.

From the foregoing cases, at least two fairly definite conclusions can be drawn:

(1) The words, "participating as a passenger or otherwise in aeronautics or aviation," "participating as a passenger or otherwise in aeronautic activity," or "participating as a passenger or otherwise in aeronautic expeditions," cover a passenger in an airplane.

(2) The words, "engaged in aviation or aeronautics," "engaged in aeronautic operations," "engaged in aeronautic activity," or "engaged in aeronautic expeditions," do not cover the ordinary passenger in an airplane.

While both the word "participate" and the word "engage" mean, among other things, to take part in, it is held that "engage" is ordinarily understood to refer to an occupation or employment or continued activity, so that, in reading a policy which denied coverage to one engaged in aeronautics, it might properly be construed as not excluding a mere casual passenger in an airplane, but as referring to one who made aeronautics his vocation or took some active part in the operation of the plane. It cannot be denied, however, that one may temporarily engage in taking a short trip or in writing a letter or in casual conversation, so that the meaning or scope of the word "engaged" may be made entirely clear by its association with other words.

■■ The decision in the case of Gibbs v. Equitable Life Assur. Society of United States, supra, sustains the conclusion of the lower court in this case. The language in the policy there was "engaging as a passenger or otherwise in submarine or aeronautic expeditions." Here it is, "engaging, as a passenger or otherwise, in submarine or aeronautic operations." The policies in that case were written in 1924, and, while we are not advised as to when the policies with which we are concerned were written, we know it was prior to December, 1925. It is not conceivable that the court which decided the Gibbs Case would

have held differently if the word "operations" had been substituted for the word "expeditions." In fact, the word "operation" seems more descriptive of the flying of a plane in regular passenger service than the word "expedition." The court in the Gibbs Case was of the opinion that in the early stages of the operation of passenger planes, those who were engaged in such operations, as passengers or otherwise, were regarded as engaging in expeditions. Certainly if a passenger in a plane is taking part in aviation or aeronautics, as held in Head et al. v. New York Life Ins. Co., supra, or in an aeronautic expedition, as held in the Gibbs Case, he is also taking part in an aeronautic operation. The word "operation" is defined as "action or activity." The operation of a plane is an aeronautic activity, and one who goes in it as a passenger is participating or engaging to some extent in that activity. Pittman et al. v. Lamar Life Ins. Co., supra. While without the words, "as a passenger or otherwise," there would be room for doubt as to the meaning and scope of the expression, "engaging in aeronautic operations," the addition of those words does away with any ambiguity and shows that the phrase, "engaging as a passenger or otherwise in aeronautic operations," is intended to cover one who is temporarily occupied in being a passenger in a plane as well as one who takes an active part in the operation or makes aeronautics his business. We think no one can properly misunderstand what is meant. The double indemnity clause, in our opinion, excludes from coverage death resulting from engaging in a single trip in an airplane as a passenger. It will be noted that in Gits v. New York Life Ins. Co. (C. C. A. 7), supra, where the language was "engaging in submarine or aeronautic operations," the court pointed out that "the ambiguity and doubt are emphasized by the facility with which the insurer could have included passengers within the exception, were it so intended." In the case before us, the insurer did include passengers within the exception. That the intent of the parties might have been better expressed is of no importance. It is ambiguity, and not awkwardness of language, which opens the door for construction. If the meaning of language is clear, there is no room for construction.

The decree is affirmed.

STONE, Circuit Judge (dissenting).

I am constrained to dissent from the able opinion of Judge SANBORN for the reasons hereinafter stated.

If one were to say that a person was "engaging * * * in * * * aeronautic operations," every one would understand that he was occupied with some phase of operation of airplanes. In ordinary parlance, "engaging * * * in * * * aeronautic operations" means activity in the field of aeronautics. Usually, "engaging" would convey the idea of continued or repeated action as opposed to a single instance of activity [First Nat. Bank v. Phoenix L. Ins. Co., 62 F.(2d) 681, 682 (C. C. A. 6); Head v. N. Y. Life Ins. Co., 43 F.(2d) 517 (C. C. A. 10); Gits v. N. Y. Life Ins. Co., 32 F.(2d) 7, 9 (C. C. A. 7); Peters v. Prudential Ins. Co., 133 Misc. 780, 233 N. Y. S. 500; Price v. Prudential Ins. Co., 98 Fla. 1044, 124 So. 817, 820; People v. Bright, 203 N. Y. 73, 96 N. E. 362, 364, Ann. Cas. 1913A, 771; White v. Sikes, 129 Ga. 508, 59 S. E. 228, 229, 121 Am. St. Rep. 228; State v. Roberson, 136 N. C. 587, 48 S. E. 595, 596; Guiltinan v. Met. L. Ins. Co., 69 Vt. 469, 38 A. 315], although it might refer to active participation in a single operation. Certainly, a prime requisite of "engaging in" anything is a participation therein in some way and to some degree. Benham v. Am. Central L. Ins. Co., 140 Ark. 612, 617, 217 S. W. 462. A person who has no connection with aeronautics except to ride in a plane as a passenger does not actively participate in the operation of that plane and has no connection with any other aeronautic operations. If he is "engaged" in anything, it is in riding in the plane. A railroad passenger is in no way engaged in railroad operations in any usual sense of such words, and they would never carry that meaning in ordinary communication. But the policy in regard to this "engaging" states "as passenger or otherwise"; therefore, the final problem of construction is whether the additional words "as passenger or otherwise" would make it entirely clear that "engaging * * * in * * * aeronautic operations" was intended to apply to a mere passenger who had no further connection with such operations than to ride in a plane. Obviously, the policy intended to exclude passengers engaging in aeronautic operations. Are all passengers so engaged, are any so engaged, or are only some so engaged? Appellant argues that all of the language of the policy provision is given full effect in accordance with its ordinary meaning if it be applied (as to passengers) to such as are occupied with airplane operations, whether they have anything to do with operation of the particular plane or not—such as executive officers of plane companies or others. The reason suggested by appellant why

the insurance company might wish to except this class of passengers from ordinary passengers is that such would probably make frequent use of airplanes while the ordinary person would rarely do so, and the insurer might be willing to take the risk of a very rare airplane trip when it would be unwilling to chance the frequent airplane traveler. It seems to me this argument is entirely plausible. It has been judicially recognized as such in Gits v. N. Y. Life Ins. Co., 32 F.(2d) 7, 9 (C. C. A. 7). The words used are, without any explanation, incapable of construction according to the ordinary meaning of all of them. They must either be explained or some of them must be warped from ordinary meaning if significance is to be given to all. In such a situation the expression is ambiguous. When this situation is clarified by a showing that there is a sensible meaning relating to the risk which will give full effect to every word used, the insured is re-enforced in his position that such must be the meaning intended. I must conclude, from the above, that the judgment should be reversed and the case remanded.