GILLIS *v.* GUARANTEE RESERVE LIFE INSURANCE CO.

[No. 168A10. Filed September 8, 1969. Rehearing denied October 15, 1969. Transfer denied February 16, 1970.]

*Owen W. Crumpacker, Richard P. Komyatte, Crumpacker & Abrahamson,* of Hammond, for appellant.

*Miss Anne Kutak, Eugene M. Feingold, Wilson, Benne, Feingold & Donnersberger,* of Hammond, for appellee.

WHITE, J.—Plaintiff-Appellant, a dentist, was insured by defendant-appellee under two accident policies. At age 84, while still active in the practice of his profession, but while working in his yard at home in St. Petersburg, Florida, on June 21, 1965, plaintiff-appellant fell and sustained multiple injuries, including fractures of his left arm. He was paid monthly disability benefits under each policy (a total of $200.00 per month) for eleven months following the injury (i.e. to and including May 21, 1965, a total of $2,200.00). After the payments ceased he wrote to appellee's president for an explanation and received a reply stating, in substance, that since he was no longer under the care and regular attendance of a physician, appellee had no further liability under the policy.

On November 12, 1966, appellant commenced this action against appellee. The first paragraph of appellant's two-paragraph complaint prayed for a declaratory judgment determining the rights of the parties under the two policies and the second paragraph prayed for damages to date of judgment for alleged breach of those insurance contracts. Essentially appellant was seeking judgment for the total amount of disability benefits of $200.00 for each month elapsed from the time payments were suspended until the time of trial. Additionally, he sought a declaratory judgment that the appellee-insurance company was obliged to continue paying these monthly benefits so long as appellant lived and his disability continued. The condition which appellant contends entitles him to these continued payments is alleged in rhetorical paragraph (4) of Paragraph I and again (in identical words) in rhetorical paragraph (6) of Paragraph II, as follows:

"That for many years prior to June of 1965, plaintiff was actively engaged in the practice of the profession of dentistry. However, in June of 1965, plaintiff suffered permanent injuries to his left arm and hand as a result of an

accidental fall. That as a result of the injury sustained in this accidental fall, plaintiff's left hand, despite extensive medical care and treatment, has not returned to its normal function, and plaintiff has consequently been unable to perform essential and necessary manipulations of dental instruments in the performance of his profession. As such, plaintiff has been and presently is unable to perform the duties of his profession, solely and entirely as a result of the aforesaid accident and injury."

Copies of the two policies were attached to the complaint as Exhibit A and Exhibit B. The pertinent provisions of each policy are set out verbatim in the margin.[1]

---

[1] Policy A (i.e., Exhibit A of the Complaint) contains, among others, these provisions:

"ACCIDENT BENEFITS

"PART A. LOSS OF LIFE AND OTHER SPECIFIC LOSSES
"If injury shall wholly and continuously disable the insured from the date of the accident and result in any of the following specific losses within one hundred days thereafter, the Company will pay for loss of
* * *
"one Hand _____One Third the Principal Sum
* * *

"Loss as above used with reference to hand or foot means severance through or above the wrist or ankle joint, or in any case acknowledgment by the Company of the total and irrecoverable loss of the use thereof.
* * *

"PART D. TOTAL ACCIDENT DISABILITY BENEFIT FOR LIFE.
"If injury shall not result in any of the specific losses described in Part A but shall, while this policy is in force, wholly and continuously disable the Insured for one day or more, the Company will pay benefits at the rate of the Regular Monthly Benefit so long as the Insured lives and suffers said total loss of time.
* * *

"PART N. EXCEPTIONS, LIMITATIONS AND REDUCTIONS
"1. This policy does not cover any loss . . . resulting from . . . injury . . . for any period during which the Insured is not under the professional care and regular attendance of a legally qualified physician. . . .
"2. * * * The occurrence of any loss for which benefit is payable under Part A shall at once terminate the insurance effected by this policy except as respects such loss.

Policy B (Plaintiff-Appellant's Exhibit B) contains, among others, these provisions:

"ACCIDENT BENEFITS
"PART A. LOSS OF LIFE AND OTHER SPECIFIC LOSSES
"If injury shall wholly and continuously disable the insured from the date of the accident and result in any of the following specific

On the day of trial, June 1, 1967, appellee filed a second amended answer in five paragraphs, the first and second of which were admissions of most of the allegations of the two paragraphs of complaint, including admission of the occurrence of the accident and resultant injuries while the policies were in effect. Also admitted were the "disability" allegations quoted above. Paragraph III denied all allegations of the complaint not admitted in I and II. Paragraph IV of said second amended answer acknowledged that plaintiff had sustained a total and irrecoverable loss of use of the left arm and tendered (by deposit "into the registry of the clerk of the court") the sums payable under Part A of each policy for such specific loss, plus a refund of premiums paid by plaintiff-appellant after date of accident. Said paragraph also alleged that each policy provided that "[t]he occurrence of any loss for which benefit is payable under Part A shall at once terminate the

---

losses within one hundred days thereafter, the Company will pay for loss of

\* \* \*

"One Hand _____One-Third the Principal Sum

\* \* \*

"Loss as above used with reference to hand or foot means severance through or above the wrist or ankle joint, or in any case acknowledgment by the Company of the total and irrecoverable loss of the use thereof. . . .

\* \* \*

"PART D.  TOTAL ACCIDENT DISABILITY BENEFITS

"If injury shall not result in any of the specific losses described in Part A but shall, while this policy is in force, wholly and continuously disable the Insured for one day or more and prevent the Insured from performing the duties of any occupation, the Company will pay benefits at the rate of the Monthly Income Single Benefit so long as the Insured lives and suffers said total loss of time.

\* \* \*

"PART M.  EXCEPTIONS, LIMITATIONS AND REDUCTIONS

"1.  This policy does not cover any loss . . . resulting from . . . injury or sickness for any period during which the Insured is not under the professional care and regular attendance of a legally qualified physician. . . .

"2. \* \* \* The occurrence of any loss for which benefit is payable under Part A shall at once terminate the insurance effected by this policy, except as respects such loss."

insurance effected by this policy, except as respects such loss." Said Paragraph IV of appellee's second amended answer prayed for "judgment in favor of the plaintiff against the defendant in the amounts of Sixteen Hundred sixty-eight dollars ($1,668.00) as indemnities, Three Hundred eight dollars ($308.00) as refund of premiums paid by the plaintiff, interest thereon as computed by the Court; and for all other relief in the premises."

Paragraph V of the second amended answer pleaded the clause of each Policy [Part N, (1) (h) or Part M, (1) (h)] which excludes coverage for "any loss . . . resulting . . . from . . . injury . . . for any period during which the Insured is not under the professional care and regular attendance of a . . . Physician . . ." and that plaintiff-appellant was not under such care during the period for which no payments were made and prayed judgment for defendant-appellee. No reply was filed to any paragraph of answer, although it appears that the trial proceeded on the assumption that affirmative allegations of the answer (except any already alleged in the complaint) were presumed to be denied.

The issue developed by the pleadings is delineated by the following conflicting contentions of the parties:

The insured, plaintiff-appellant, contends that his physical condition resulting from the accident entitles him, under the provisions of "Part D." of each policy, to disability benefit payments each month for life, if his disability so long continues.

The insurer, defendant-appellee, contends that plaintiff-appellant's physical condition resulting from the accident is the total and irrecoverable loss of the use of the left hand for which appellant is entitled to the specific loss benefit provided in "Part A." Further, that Clause 2 of "PART N" of policy A and Clause 2 of "PART M" of policy B terminates the insurance except as respects the specific benefit provided in "PART A."

The trial court resolved the issue in favor of the insurance company and it is now before us on the insured's appeal.

Trial was by court. The oral evidence consisted of the testimony of plaintiff and of a physician called by plaintiff. (This physician had examined plaintiff the day before the trial.) Also admitted into evidence were several written reports by physicians who had attended the plaintiff-appellant, reports by the plaintiff-appellant to defendant-appellee, and some correspondence between appellant and appellee. The trial court on June 20, 1967, entered the following finding and judgment:

"The Court now finds for Plaintiff on his complaint and for Defendant on paragraph 4 of Defendant's answer, and against the Defendant on remaining paragraphs of answer, and finds as follows:

"That Plaintiff recover in the sum of $2,600.00 in unpaid monthly benefits to May 31, 1967, along with interest thereon in the amount of $91.67.

"Further that Plaintiff recover the sum of $380.00 for return of premiums paid along with interest thereon in the amount of $34.00, which sums have already been deposited with the Clerk of this Court under paragraph 4 of Defendant's answer.

"Further that Plaintiff have and recover the sum of $1,668.00 with interest from June 1, 1967, to this date in the amount of $5.50, which sums have also been deposited in to the Clerk's Office of this Court, by Defendant under paragraph 4 of Defendant's answer.

"Further that said policies were and are terminated as of June 1, 1967.

"Further that the sum of $2,284.00 now on deposit in the Clerk's Office of this Court be applied first to the payment of interest herein and second to payment of principal due and the Clerk is ordered to disburse said sums as so directed.

"It Is Therefore Ordered, Adjudged and Decreed that Plaintiff do have and recover from the Defendant the sum of $4,648.00, along with interest in the amount of $131.23 to date along with costs in the mount of ———— dollars."

Appellant timely filed a motion for new trial which was overruled and which ruling is the error asserted on this appeal. The motion was based on five alleged grounds, but his whole argument is directed to the proposition stated in the first sentence of his summary of argument: "The decision of the Trial Court is contrary to law in concluding that 'said policies were and are terminated as of June 1, 1967'."

It will be noted by a careful reading of the foregoing entry of June 20, 1967, that the decision that "said policies were and are terminated as of June 1, 1967" is in the form of a finding but the entry contains nothing in the form of a judgment to that effect. Accordingly, we entered orders holding the appeal in abeyance and directing the trial court to adjudicate and enter a final judgment on all issues and findings not adjudicated by the court's entry of June 20, 1967.

On May 27, 1969, the trial court made the following entry which has been duly certified to this court:

### "SUPPLEMENTAL JUDGMENT

"Comes now the Court and pursuant to and in accordance with the Order of the Appellate Court of Indiana entered on April 8, 1969, now makes a further adjudication as follows:

"It is now ordered, adjudged and decreed that plaintiff is entitled to recover from the defendant the sum of two thousand nine hundred and eighty dollars ($2,980.00) principal and one hundred twenty-five dollars and sixty-seven cents ($125.67) in interest by way of damages for monthly benefits acrued and unpaid to May 31, 1967, and the return of premiums received by the defendant, said interest being computed to and including May 31, 1967.

"It is further ordered, adjudged and decreed that the policies of insurance sued upon were and are terminated as of June 1, 1967, and that plaintiff have and recover the sum of sixteen hundred and sixty-eight dollars ($1,668.00) with interest from June 1, 1967, to this date in the amount of five dollars and fifty cents ($5.50) (sic)

"The Clerk of this Court is ordered and directed to certify to a copy of this supplemental judgment and incorporate

the same in the transcript of the record on appeal all in accordance with the Order of the Appellate Court of Indiana under the date of April 8, 1969 as aforesaid."

The decision of which appellant complains having been reduced to a final judgment, we are now in a position to consider the appeal on its merits. *Montgomery etc.*, v. *Board of Zoning Appeals of Lake County, et al.*, 244 Ind. 117, 191 N. E. 2d 317 (1963).

There was evidence from which the trial court could have found, and we must therefore assume that he did find,[2] that plaintiff-appellant had sustained "the total and irrecoverable loss of use of the left hand" which was acknowledged by the defendant-appellee in its paragraph IV of answer, on which the trial court found for appellee. Furthermore, the testimony of plaintiff-appellant himself, particularly on cross examination was sufficient to sustain a finding that such "total and irrecoverable loss of . . . use" resulted within one hundred days of the injury.[3]

---

[2] *Beatson* v. *Bowers*, 174 Ind. 601, 91 N. E. 922, 925 (1910).

[3] "Part A" of each policy covers only those listed specific losses which "result . . . within one hundred days" after an accident.

In his reply brief appellant makes for the first time the argument: "It is quite clear that under the express language [of Part A of the policies in suit] appellee would not be liable to appellant (or any other insured) for a loss of a hand unless the severance or its acknowledgment occurred within 100 days after the accident." Since this argument was not made in the (initial) appellant's brief as required by Supreme Court Rule 2-17, it was waived. *Michaels* v. *Johnson*, 140 Ind. App. 389, 223 N. E. 2d 585, 225 N. E. 2d 581, 10 Ind. Dec. 77, (1967). Notwithstanding the fact, however, that we have not had the benefit of appellee's answer to this argument, we are not pursuaded by it. To make the company's liability under Part A for "the total and irrecoverable loss of the use" of a hand or foot dependent on whether there was "acknowledgment" by the company of such loss of use would, indeed, as appellant suggests, "permit a company unilaterally to decide whether it will pay benefits under its disability clause or under its specific loss clause." But worse than that, it would permit a company in a case in which there is no disability but there is a total and irrecoverable loss of the use of a limb to "unilaterally decide" to make no payment at all. Such a case might have been appellant's had his profession been one which he could practice without using his left hand rather than the dentistry which he could not pursue without use of both hands.

At best, the clause defining a "Part A" loss of a hand or a foot (in addition to a severance) as "in any case acknowledgment by the Company of the total and irrecoverable loss of the use thereof" is ambiguous

In support of this contention that the trial court erred in declaring the policies terminated, appellant has cited many authorities and quoted many general rules for the interpretation of contracts with which we have no occasion to quarrel. A large part of appellant's argument treats such termination as an attempted cancellation by the appellee company. Since no cancellation, or attempted cancellation, is involved, the authorities cited and rules quoted with respect to cancellations have no application to the question of whether the policies were terminated by occurrence of a loss covered by Part A.

Insofar as appellant addresses himself to the issue raised by Paragraph IV of the second amended answer, which is to say, whether appellant sustained total and irrecoverable loss of the use of his hand, a specific loss for which benefit is payable under Part A when acknowledged by the company, appellant says:

". . . the record discloses that he still has his left hand and is still using it. His disability was an *occupational disability*." (Appellant's emphasis.)

By saying that the disability is occupational, appellant is apparently attempting to say that he has merely lost enough of the use of his left hand to make it impossible for him to practice his profession of dentistry, but that he has not lost all use of his hand and therefore his loss is not total.

The only allegations of disability in appellant's complaint are the identical allegations of rhetorical paragraph (4) of Paragraph I and rhetorical paragraph (6) of Paragraph II, admitted by appellee and quoted *supra*.

---

and requires construction. To construe it as appellant has, makes it an illusory promise and therefore no contract at all as to total and irrecoverable loss of use of a hand or foot. *Fowler Utilities Co.* v. *Gray*, 168 Ind. 1, 79 N. E. 897 (1907); Annotation 137 A. L. R. 920; *Williston Contracts*, 3rd Ed. § 105A, p. 420. To construe it by disregarding the acknowledgment provision not only removes the ambiguity but also that illusory feature and is a construction against the company in that it provides a benefit for the total and irrecoverable loss of the use of a hand or a foot in all cases.

In support of those allegations appellant testified (as summarized in his own brief) that:

"He has not practiced dentistry since the date of the accident. He cannot use his left hand in the practice of dentistry safely or effectively. The sensory nerves seem to be impaired and sensory feeling in his fingers and thumb is not there as it used to be. Even as to temperature there is a lack of sensory feeling most of the time, and the motor nerves are impaired to the point that he can't securely hold a fork even when he is eating, and he wouldn't dare try to pick up a cup of coffee with his left hand. It might drop, or the fork might drop just involutarily."

This testimony of loss of use goes beyond occupational loss of use and supports fully the implied finding by the trial court (implied in the trial court's finding for appellee on its Paragraph IV of second amended answer)[4] that the hand is of no practical use to appellant, which is to say, that he has suffered a total loss of its use. If appellant's occupation had been such that he could continue to pursue it without using his left hand and if he had sued for the total loss of use benefit under Part A, no court of appellate review would be justified in disturbing a trial court's finding in his favor, if supported by these same admitted allegations and this same evidence we have quoted from the record. The mere fact that appellant's occupation is the practice of dentistry, which he cannot carry on without the use of his left hand, does not make his loss of the use of that hand any less complete or less total.

If, therefore, we are to hold that the acknowledged total and irrecoverable loss of use of the appellant's left hand has not terminated these policies, we can only do so if the policy provision for termination is invalid. Appellant seems to be asserting the invalidity of the provision when he says in his brief:

---

[4] Rhetorical paragraph 7 of Paragraph IV alleges:

"That the injury to the Plaintiff wholly and continuously disabled the Plaintiff, and continuing proofs of loss submitted by the Plaintiff evidenced the fact that the Plaintiff had totally and irrecoverably lost the use of his left hand immediately as a result of his accident, and the fact that rehabilitation could not restore the use thereof."

"There is no law which would or might permit an insured to be deprived of his monthly 'lifetime' benefits through permitting the insurance company to 'acknowledge' the loss of a hand, which wasn't severed or lost, and the payment of $834.00 into the Clerk's office when they are sued and the plaintiff finally gets the case to trial."

In support of that proposition appellant cites and quotes from *American Liability Company* v. *Bowman,* 65 Ind. App. 109, 114 N. E. 992 (1917), and *Federal Life Insurance Company* v. *Bolinger,* 100 Ind. App. 222, 193 N. E. 681 (1935). Neither case involved a policy containing a termination provision and in neither case did this court declare any policy provision invalid or refuse to abide by the clear meaning of a provision of a policy asserted as a defense.

In the *American Liability* case, we did expound upon and cite authority for the familiar rule of contract law that ambiguities are construed against the party who draws the contract. The defense there was that the disability involved neuritis which, under a "miscellaneous" provision of the policy, limited the company's liability to four weeks. The trial court awarded disability benefits for the full period although it did find, specially, that the insured had developed neuritis. Chief Judge Felt's opinion for the court affirmed the trial court by construing the trial court's finding and the policy provision thusly:

"This is a clear statement that, notwithstanding neuritis developed from the injury, appellee was continuously and totally disabled by the original injury independently of neuritis or any other cause other than such injury; in other words the period of total disability for which appellee was allowed compensation was independent of, and not changed or prolonged by, neuritis. To hold that the development of neuritis would shorten the period of compensation to four weeks under such a state of facts would be to bring the provisions of said clause No. 2 into conflict with and make them contradictory to the general provisions on the face of the policy which promise compensation for total disability for a period of time not exceeding twenty-four months. The provisions of said clause No. 2 may apply to cases in which

neuritis or other diseases named develop and in which it is not shown that the period of disability for which compensation is allowed was entirely independent of and not prolonged by such disease."

The *Federal Life* case comes much nearer to being in point. The appellee was insured under a policy which provided, under one part of the policy, a specific indemnity for the loss of a hand. Another part of the policy provided a weekly indemnity for loss of time from work. Appellee sued for the specific indemnity for loss of a hand and for the weekly indemnity for the time lost, all because of the same injury. The appellee recovered both the specific indemnity for the loss of the hand and the weekly indemnity for his disability or loss of time. The appellant insurance company contended that "the provisions of the policy do not cover loss of time where indemnity for injuries is also claimed." The company based this contention on words on the back of the policy (and which appellee contended were not a part of the contract) which read: "This policy provides indemnity for loss of life, limb, limbs, sight, or time, caused by accidental means to the extent herein limited and provided." Appellant asserted that because of the "or" before " 'time' the appellee is limited either to loss of . . . limb . . . as one alternative or to 'time' lost. . . ." Of that contention the opinion stated:

> "We do not so construe the policy. If it may be said that there is any ambiguity in the policy contract in the respect under consideration such ambiguity will be resolved in favor of the insured. It is a familiar rule in the construction of insurance policies that where they are ambiguous or require interpretation or are reasonably susceptible of two different constructions so that reasonably informed men on reading them would honestly differ as to their meaning the courts will adopt that construction which is most favorable to the insured. See, *Masonic Accident Insurance Company* v. *Jackson* (1929), 200 Ind. 472, 164 N. E. 628; *United States Fire Insurance Co.* v. *Banks of Wabash, Inc.* (1932), 95 Ind. App, 100, 180 N. E. 765 and cases cited therein."

Not only do we have no ambiguity in the policy provision, as applied to the facts in the case at bar, but we also have a general finding and judgment of the trial court which impliedly finds (on sufficient evidence) that appellant did sustain the total irrecoverable loss of the use of his left hand, thereby terminating the policies. Were a company here attempting to avoid payment for the total and irrecoverable loss of the use of a hand merely because there had not yet ocurred "acknowledgment by the Company," or were a company here attempting to avoid continuation of monthly disability payments by the acknowledgment of a total and irrecoverable loss of use which did not, in fact, exist, we could well have an ambiguity which would require a construction against the company similar to the constructions in *American Liability* and *Federal Life*.[5] But those cases are not controlling when ambiguity is absent.

The judgment of the trial court is affirmed and the costs of this appeal are assessed against the appellant.

Pfaff, C.J., Hoffman and Sharp, JJ., concur.

NOTE.—Reported in 250 N. E. 2d 497.