In the Matter of the Appraisal of the Loss and Damage to the Building Known as 176–178 East Main Street, Amsterdam, New York, Resulting from a Fire on August 15, 1932.

County Court, Montgomery County, January 5, 1933.

*Harry V. Borst,* for the owner.

*Ainsworth & Sullivan,* for the insurance companies.

STEWART, J.   Two motions have been made in this matter.

The Buffalo Insurance Company of Buffalo, Northern Insurance Company of New York, Dubuque Fire and Marine Insurance Company, General Insurance Company of America, Ohio Farmers Insurance Company and New York Co-Operative Underwriters, hereinafter referred to as the " insurance companies," appearing specially by their attorneys, Ainsworth & Sullivan, ask the court to vacate an order granted by this court on November 5, 1932, appointing Thomas F. Kane of Amsterdam, N. Y., as umpire under the provisions of certain insurance policies insuring property at 176–178 East Main street, Amsterdam, N. Y. .

Among the reasons advanced by the insurance companies for vacating the appointment of the umpire is that under the provisions of section 121 of the Insurance Law of the State of New York, an application for the appointment of an umpire must be made on five days' notice in writing.   It appears that such notice was not given.   An appointment without notice is a nullity and the insurance companies are entitled to an order setting aside the appointment of an umpire on November 5, 1932.

At the time that the motion to set aside the appointment of the umpire was returnable before this court, and in the event that such appointment should be vacated by this court, the owner of the property moved for the appointment of an umpire, having given five days' notice in writing of such application.

The insurance companies object to such appointment upon the ground that the loss has already been appraised and an award made; that no appraisal proceeding is pending and that this court is without jurisdiction to make such appointment.

There is submitted by the insurance companies a written agreement for an appraisal of the loss executed by the owner and by the insurance companies.   A. J. Benoit of Green Island, N. Y., and George Wilson of Amsterdam, N. Y., were appointed appraisers by this agreement, it appearing that Mr. Benoit was named by the insurance companies and Mr. Wilson by the owner.   The reverse side of the agreement has a printed affidavit to be executed by the appraisers, and also a form for the selection of an umpire. The name of Benjamin Reiner is written in as the umpire and both the affidavit and the form for the appointment of an umpire are signed by the appraisers.

It appears that the appraisers signed the affidavit of appraisal on September 27, 1932, before Edward A. McCaffrey, a notary public, and also signed the blank for the appointment of an umpire on the same date. There is a sharp conflict as to what occurred at the time of the signing of the blank for the selection of an umpire. Mr. Wilson contends that Mr. Benoit asked him to sign in two places, which he did, and at that time no name had been written in as the umpire; that thereafter Mr. Benoit wrote in the name of Mr. Reiner without the consent of Mr. Wilson. Mr. Benoit states that the name of Mr. Reiner had already been written in at the time that Mr. Wilson signed.

From a reading of the affidavits submitted it would appear that there was no consent by Mr. Wilson to the appointment of Mr. Reiner. There are a number of circumstances which lead to this conclusion. Mr. Reiner is a resident of Albany. It is not disputed that he was unknown to Mr. Wilson; that his name was proposed by Mr. Benoit, and that Mr. Wilson had no time or opportunity to investigate the qualifications or interests of the proposed umpire. The selection of an umpire is of vital importance to the owner as well as to the insurance companies, and it is hardly probable that an appraiser would consent to the appointment of an umpire whose name was proposed by the appraiser appointed by the insurance companies without knowing the umpire or without some investigation.

It is not denied that before September twenty-seventh an offer was made by Mr. Benoit to compromise the matter by the payment of $18,000. Mr. Wilson's estimate of the loss was in excess of $30,000. The amount of the award signed by Mr. Benoit and Mr. Reiner for damages to the building was $18,662. No statement of the items of this amount has been submitted, and it is claimed by Mr. Wilson that no such statement was ever submitted to him. Mr. Wilson states that Mr. Reiner has frequently acted on behalf of the insurance companies and for the General Adjustment Bureau and that his interest is with the insurance companies. This statement is not denied. Even if it should be denied, the fact that an itemized statement has been submitted as a part of the affidavit of Mr. Wilson giving in detail the items of loss with a total of over $30,000, and the fact that the award as signed by Mr. Benoit and Mr. Reiner is only slightly larger than the original offer made by Mr. Benoit, is some proof that Mr. Reiner was not a disinterested umpire. Mr. Wilson states that various threats were made to compel him to sign the award with Mr. Benoit and Mr. Reiner. These statements are denied by Mr. Benoit but not by Mr. Reiner, and in that connection it appears that the award

was signed on October twenty-eighth, but not mailed to Wilson until November ninth. No explanation of this delay is given and it was during this time that Mr. Wilson states he was urged to sign the award.

An umpire should be totally disinterested in order that the award should honestly and fairly represent the loss, and there is a grave question as to whether Mr. Reiner is such an umpire. The owner is not entitled to the appointment of another umpire by the court upon the ground that Mr. Benoit was not disinterested, but these facts have a bearing upon the question as to whether Mr. Wilson or Mr. Benoit is stating the truth as to what occurred when the form for the appointment of an umpire was signed.

For the reasons stated it appears that the appointment of Mr. Reiner was without the consent of Mr. Wilson, and sufficient facts have not been presented to show a ratification of the appointment.

Both parties complain that the appraiser selected by the other party is not disinterested. An appraiser is not the agent of the party appointing him and should be disinterested at all times. These parties were willing to proceed, however, with knowledge of the facts and cannot now complain of the loss of an alleged right to have the appointment of the appraisers vacated on the ground that they are not disinterested.

There remains only the question as to the jurisdiction of this court to appoint an umpire.

Mr. Reiner not having been appointed an umpire in accordance with the provisions of the policies, an award signed by him is a nullity, and, under the provisions of the insurance policies, an umpire not having been selected within fifteen days, this court has authority to appoint, upon application of either party, upon five days' written notice having been given.

A court has always jurisdiction to set aside a judgment where fraud has been practiced in the act of obtaining the judgment, even where the judgment is attacked collaterally. (*Baker* v. *Byrn,* 89 Hun, 115; *Ward* v. *Town of Southfield,* 102 N. Y. 287; *Mandeville* v. *Reynolds,* 68 id. 528.)

An award made by an appraiser and an umpire where the umpire was not appointed with the consent of the other appraiser is a fraud upon the owner of the property and such an award may be collaterally attacked.

No case has been cited, nor has this court been able to find any authority to the effect that the remedy of the owner is solely an action to set aside the award. If there was no selection of an umpire by the appraisers, there can be no award, as Mr. Wilson has not concurred in the award.

The owner should not be deprived of his right to proceed with the appraisal as provided in the policies. An appraisal cannot be terminated without the consent of the owner by the facts here disclosed.

An appraisal has not been made as the award was signed by an umpire not selected by the appraisers. Mr. Benoit states that he is no longer qualified to act and refuses to act further as an appraiser. An appraiser may refuse to carry out his duties at any time. The remedy of the insurance companies is to appoint another appraiser.

Orders in accordance with this opinion may be submitted to me on January 9, 1933, at ten A. M., at which time an umpire will be named by the court.