## WELLS v. KANSAS CITY LIFE INS. CO.
### No. 172.

District Court, D. North Dakota, S.E. D.
Aug. 3, 1942.

E. T. Conmy and Conmy & Conmy, all of Fargo, N. D., for plaintiff.

Howard G. Fuller and J. M. Powers, both of Fargo, N. D. (Joseph R. Stewart, of Kansas City, Mo., of counsel), for defendant.

VOGEL, District Judge.

This case was tried to the Court without a jury. The facts necessary to a determination of the points in issue are briefly as follows:

On or about May 11, 1929, Ned Wells executed at Colby, Kansas, an application for a life insurance policy with the defendant Company, the application being received by W. C. Jones, General Agent for the defendant. In lieu of the first year's premium of $134.15, Jones accepted from Wells a promissory note in the amount of $134.15 payable to Jones individually not as agent. At the same time he accepted the sum of $10.00 in cash, which he credited on the back of the promissory note. The application in part provided as follows:

"If this application is accompanied by the first premium in cash and shall be approved at the home office of the Company, and a policy on the plan and for the amount applied for shall be issued while the applicant is alive and in good health, then the insurance shall be effective, subject to the terms and conditions of the policy, from twelve o'clock noon of the day this application shall be approved by the Medical Department of the home office of the Company.

"If this application is not accompanied by the first premium in cash it is agreed that the Company assumes no liability whatever until a policy of insurance is actually delivered to me during my lifetime and while I am in good health, and any money, check, note, obligation or other thing of value, given to the Company or its agent, on account of the first premium on the policy applied for shall be held by the Company merely as a deposit and not as payment until such time as the policy of insurance is issued and delivered to me during my lifetime and while I am in good health, after which the same shall be applied on such first premium charge; otherwise said deposit shall be returned to me or my heirs, executors or administrators."

Thereafter Jones forwarded the application and note to his own office in Kansas City, Missouri. Jones' office, after making an office record of the application, delivered it to the defendant at its home office in Kansas City, Missouri. The note and the $10.00 cash collected by Jones were retained by him or his office and not turned over to the defendant Company.

On May 18, 1929, the defendant's Medical Department in its home office at Kansas City, Missouri, approved Wells' application for insurance and on said date the policy contract was executed by the defendant.

On May 21, 1929, the defendant Company registered the policy with the Insurance Department of the State of Missouri. On May 21, 1929, the defendant Company credited Wells with the sum of $134.15 in its record of premium receipts and entered a charge of $32.03 against its General Agent, W. C. Jones, in its books of account with Jones, the same being the amount of net premium in excess of the agent's commission.

On May 21, 1929, the defendant delivered the executed policy to the General Agency Office of W. C. Jones. With said policy there was also delivered a form of receipt.

On May 21, 1929, the W. C. Jones General Agency mailed said policy, together with the receipt, to the said Wells at Colby, Kansas. Thereafter said Wells signed and returned the receipt to the defendant as follows:

"Instructions to Agent
Delivering this Policy
_____

"This policy of insurance is transmitted by the Kansas City Life Insurance Company to its agent to be delivered upon the following conditions only:

"1. That the agent shall personally interview the applicant before delivering the policy, and ascertain that applicant is in good health, and apparently in the same condition of health as when examined for the policy.

"2. That the agent shall deliver the policy to the insured in person, who shall receipt therefor on the form printed below.

"3. That if the agent does not find that the applicant is in good health, and apparently in the same condition of health as when examined for the policy, he shall re-

fuse to deliver the same and return it to the Home Office of the Company.

"No officer, agent or representative of this Company has authority to waive any of the above conditions, either directly or indirectly.

"Kansas City Life Insurance
Company

"Receipt for Policy

"I acknowledge receipt of the above mentioned policy, No. 452138, after having read (or heard read) the above instructions to the agent delivering the same to me, this 7 day of June, 1929.

NED WELLS
Insured

"Form 209 W. C. J."

The policy, among other things, provided a double indemnity benefit if the death of the insured should result from bodily injury effected directly by external, violent and accidental means, but providing " * * * that there shall be no liability hereunder for death resulting from self-destruction, while sane or insane, or from participation in aeronautics or submarine operations, or from military or navy service, or from riot, insurrection, or any act incident thereto or from any violation of law by the insured or directly or indirectly, wholly or in part, from poisoning, infection, or any kind of illness, disease or mental infirmity."

On October 30, 1941, Wells was instantly killed in the crash of a common carrier airplane near Moorhead, Minnesota, while riding in said airplane as a paying passenger. Wells' widow as present beneficiary of the policy has brought this suit to enforce payment of the double indemnity benefit heretofore referred to.

■ Plaintiff contends that the contract went into force and effect in the State of Kansas, and that the law of Kansas should determine what interpretation should be placed on the double indemnity feature thereof. Defendant insists that the contract went into effect and became binding after approval by the Medical Department of the defendant's home office in Missouri and the mailing of the policy by the defendant's General Agent from Kansas City, Missouri, addressed to Wells at Colby, Kansas, and that the law of Missouri should govern the interpretation of the clause in question. Insofar as a determination of the

final issue herein is involved I cannot see that it makes a great deal of difference, but from the facts as presented by the parties' stipulation of facts, and from the evidence thereafter introduced through witnesses at the time of the trial, it seems to me that the policy of insurance became effective and binding on both parties at the time the defendant's General Agency placed the policy in the mails at Kansas City, Missouri, addressed to the insured, Wells. No act was then left undone or if left undone was waived by the defendant. The policy was beyond the recall of the defendant, and had Wells died before the receipt of the policy by him, but after its mailing in Kansas City, Missouri, it seems clear to me that the defendant Company would have been held liable thereunder and that this was a Missouri contract and the Missouri law applicable thereto.

This case has been brought in the United States District Court for the District of North Dakota. Diversity of citizenship of the parties has been duly established. There is sought to have here interpreted a contract executed in another state, and which was to be performed, according to its terms, at the home office of the defendant Company in Kansas City, Missouri.

■ In the case of Klaxon Co. v. Stentor Electric Manufacturing Company, Inc., 313 U.S. 487, 61 S.Ct. 1020, 1022, 85 L.Ed. 1477, the United States Supreme Court had before it a case which was originally tried in the federal court in Delaware. The question was the applicability of a New York statute to a contract which had been drawn in New York but was being enforced in the federal court of Delaware. The Supreme Court stated, "Subject only to review by this Court on any federal question that may arise, Delaware is free to determine whether a given matter is to be governed by the law of the forum or some other law. Cf. Milwaukee County v. [M. E.] White Co., 296 U.S. 268, 272, 56 S.Ct. 229, 231, 80 L.Ed. 220. This Court's views are not the decisive factor in determining the applicable conflicts rule. Cf. Funkhouser v. J. B. Preston Co., 290 U.S. 163, 54 S.Ct. 134, 78 L.Ed. 243. And the proper function of the Delaware federal court is to ascertain what the state law is, not what it ought to be."

Section 5906 of the Compiled Laws of North Dakota for 1913 provides as follows: "A contract is to be interpreted according to the law and usage of the place where it

is to be performed, or if it does not indicate a place of performance, according to the law and usage of the place where it is made."

The North Dakota Supreme Court in the case of Cosgrave v. McAvay, 24 N.D. 343, 139 N.W. 693, 695, applied the above statute to a contract drawn and to be performed in the State of Minnesota. The North Dakota Supreme Court stated: "Under our statute (section 5350, R.C.1905) [now Sec. 5906, C.L.N.D.1913] these several contracts are 'to be interpreted according to the law and usage of the place where it is to be performed.' Had the place of payment not been stipulated, under section 5350 the contracts would have been interpreted 'according to the law and usage of the place where it is made.'"

It is apparent that if this case were being tried in the state courts of North Dakota Section 5906 would be applied. Under the circumstances, and in view of the ruling of the Supreme Court in the Klaxon case, it seems to me that the statute is an additional and binding reason for finding that the contract involved is to be interpreted in accordance with the law of the State of Missouri.

The Supreme Court of Missouri, which is the highest Court of that state, has not had occasion to interpret the phrase "participation in aeronautics or submarine operations" with which we are here concerned. Counsel has directed the Court's attention to two decisions, one by the Kansas City Court of Appeals (Meredith v. Business Men's Accident Association of America, 213 Mo.App. 688, 252 S.W. 976) and one by the St. Louis Court of Appeals (Flanders v. Benefit Association of Railway Employes, 226 Mo.App. 143, 42 S.W. 2d 973), each of which has some bearing herein.

The Kansas City Court of Appeals and the St. Louis Court of Appeals are intermediate courts, having general appellate jurisdiction up to $7,500.00. Above them is the Supreme Court of Missouri, a court of limited appellate jurisdiction. The record does not indicate that in either of the above quoted cases was certiorari taken to the Supreme Court of Missouri. Irrespective of the lack of appeal and the fact that the decisions of the Courts of Appeals are expressions of intermediate courts, their decisions are, nevertheless, binding upon the federal courts if they reflect the law of Missouri as applied to the case at hand. It, therefore, becomes necessary to analyze the decisions referred to by counsel.

Defendant in seeking to avoid payment of the double indemnity heretofore referred to relies mainly upon the case of Meredith v. Business Men's Accident Association of America, supra. That case was decided by the Kansas City Court of Appeals in 1923. In so doing it was construing the meaning of a contract executed by the parties in 1913. In that case the Kansas City Court of Appeals found that the phrase "participating in aeronautics" prevented recovery where the insured was killed while riding as a passenger for hire in an airplane.

Plaintiff attempts to counteract the force of that decision by drawing attention to the case of Flanders v. Benefit Association of Railway Employes, supra, such case being decided in 1931 by the St. Louis Court of Appeals, a court having jurisdiction equal to that of the Kansas City Court of Appeals in the State of Missouri, and wherein such Court found that the words "engaged in aeronautics" *did not* apply to one riding in an airplane as a passenger, and recovery against the insurer was therein allowed. In such decision the St. Louis Court of Appeals distinguishes the Meredith case and finds "some difference" between "participating in aeronautics" and being "engaged in aeronautics."

In the present instance we are dealing with a phrase worded somewhat differently from that in either the Meredith or Flanders decisions. The contract here provided an exclusion where death was caused "*from participation in aeronautics or submarine operations.*" There is no comma after "aeronautics" so that the word "aeronautics" apparently modifies the word "operations."

In addition to the difference in the phrases interpreted in the Meredith and Flanders decisions from that involved in the present case, it should also be pointed out that in the Meredith case the Kansas City Court of Appeals was interpreting a contract drawn in 1913, doing so in 1923, almost two decades ago. Aeronautics was in its infancy. To take a flight in an airplane, whether as operator or as passenger, was a thing of hazard. Since that time a network of air lines has encompassed the entire earth, and the average traveler thinks little more of purchasing a ticket on a common

carrier airplane than he does of purchasing one at a railroad station.

The facts and conditions confronting the Kansas City Court of Appeals in the Meredith case were entirely different from those which confront the Court in the present instance. "Participating in aeronautics" in 1913 is far different in its meaning than is "participating in aeronautics" now or in 1929. For Courts to fail to recognize that of which everyone else is aware is to make them blind and to confine them only to things long past. The law is a living thing that must keep apace with the people and conditions it regulates. I cannot believe that the Kansas City Court of Appeals at the present time under present circumstances would fail to recognize this vast change by holding to an interpretation based upon a contract executed almost thirty years ago when conditions were as different as day is from night.

 .Be that as it may, the Meredith decision would still not be controlling here for, as I have stated, the Kansas City Court of Appeals in that case did not have before it the same provision as is contained in the policy now under consideration and, further, was confronted by circumstances and conditions entirely different from those which confront the Court in the instant case. The precise question before this Court was not before the Kansas City Court of Appeals in the Meredith case. In Mutual Benefit Health and Accident Association v. Bowman, 99 F.2d 856, 858, the Eighth Circuit Court of Appeals stated:

"Under the rule of stare decisis, the language and general expressions in an opinion should be limited to the particular facts and issues involved and must be construed in light of the issues presented and considered. They should not be extended beyond that for any purpose of authority in another or different case. Safe Deposit and T. Company v. Virginia, 280 U.S. 83, 50 S.Ct. 59, 74 L.Ed. 180, 67 A.L.R. 386. To be binding as a precedent, there must have been an application of the judicial mind to the precise question necessary to be determined in order to fix the rights of the parties. * * *"

The Kansas City Court of Appeals in the Meredith case not having determined the problem in issue here, and there having been cited to this Court no decision of a Missouri Court so doing, it becomes the duty of this Court to interpret the meaning of the phrase in question. The weight of authority of the modern decisions is to hold that one who rides as a passenger in an airplane operated by others is no more participating in aeronautics operations or engaging in aeronautics than is the passenger who purchases a railroad ticket and rides a railroad train as a passenger participating in or engaging in railroad operations. The commonly used, generally accepted meaning of the phrase "participating in aeronautics or submarine operations" does not include, under present circumstances and present conditions, riding as a paying passenger in common carrier airplanes. The policy contract was drawn by the defendant. Had it intended to exclude from coverage passengers in common carrier airplanes, as well as those who participated in aeronautics operations, it could easily have done so, and in such a manner that no doubt would have been left in the minds of purchasers of its policies.

I, accordingly, find judgment for the plaintiff for the amount demanded in the complaint, plus costs and disbursements. Plaintiff's attorneys are instructed to prepare and submit findings and order in accordance herewith.