HARTOL PRODUCTS CORPORATION, Appellant, *v.* PRUDENTIAL INSURANCE COMPANY OF AMERICA, Respondent.

Argued December 3, 1942; decided March 4, 1943.

*Harold R. Medina, H. Victor Crawford, Stuart Sprague* and *William F. McNulty* for appellant.

*Benjamin Paul Goldman* for respondent.

RIPPEY, J.   On February 6, 1930, defendant delivered to Frank C. Hart a policy of life insurance, dated that day and numbered 6820987, in which Hart was named as the insured and plaintiff was named as the beneficiary.   In consideration of the payment of an additional premium, a rider was attached to and made a part of the policy providing for "Accidental Death Benefit," which, so far as material, read as follows: "In Addition to the Insurance Under the Policy to which this rider is attached, and subject to the provisions of said Policy, the Company will pay, as an Accidental Death Benefit, Fifty Thousand Dollars, to the Beneficiary or Beneficiaries under said Policy, or, if no Beneficiary be living when said Policy becomes a claim by death, to the executors, administrators or assigns of the Insured, immediately upon receipt of due proof that such death occurred during the continuance of said Policy while there was no default in the payment of premium, as a result, directly and independently of all other causes, of bodily injuries, effected solely through external, violent and accidental means, of which, except in case of drowning or of internal injuries revealed by an autopsy, there is a visible contusion or wound on the exterior of the body, and that such death occurred within ninety days of the accident, provided, however, that no Accidental Death Benefit shall be payable if such death resulted from suicide — whether sane or insane; from having been engaged in military or naval service in time of war; or in submarine operations or in aviation or aeronautics, as a passenger or otherwise; or from a state of war, riot or insurrection; or directly or indirectly from bodily or mental infirmity or disease in any form."   Between February 6, 1930, and August 9, 1935, changes and amendments were made in and to the policy necessitating rewriting but not affecting in any respect any question here involved.   The rider as originally issued and the policy proper with such changes and amendments under its original date of issuance and number were in full force and effect at the time of the death of the assured.

The accidental death of Frank C. Hart occurred on January 14, 1936, near Goodwin, Arkansas, in a crash of a passenger plane of United States registry in which he was riding as a fare-paying passenger *en route* from Newark, N. J., to Los Angeles, California, on a regularly scheduled flight over an

established air route. The plane was then being operated by a licensed pilot. Hart had no part in operating the plane during the flight or at the time of the crash and was not engaged in flying, aviation or aeronautics as an occupation or calling at the time of his death. He was the president of the plaintiff corporation which was engaged in the oil business and was on a business trip for his company when the fatal accident occurred. When claim was presented by the named beneficiary for payment of the accidental death benefit provided for in the policy, payment was refused by defendant on the ground that, as found by the trial court, " the manner in which Frank C. Hart's death resulted was not within the coverage of the ' Accidental Death Benefit ' provisions contained in the policy of life insurance bearing number 6820987." The correctness of that finding, a point of construction of the accidental death benefit provision of the policy, presents the only matter raised for our consideration.

It is unquestionably the rule that " Contracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used, and if they are clear and unambiguous the terms are to be taken and understood in their plain, ordinary and proper sense " (*Johnson* v. *Travelers Ins. Co.*, 269 N. Y. 401, 408). Any literal interpretation of the exclusion clause in this case in so far as it affects the right of plaintiff to recover, with the setup, arrangement and punctuation of words and expressions, seems to be concededly impossible. If the words " or in aviation or aeronautics, as a passenger or otherwise " are considered as set off by themselves, as they are by their arrangement in the clause, without other connection, they are meaningless. Quite obviously, as seems to be conceded by respondent, so far as material here, the clause in fact must be arranged to read: " no Accidental Death Benefit shall be payable if such death resulted * * * from having been engaged * * * in aviation or aeronautics, as a passenger or otherwise." As appellant urges, the word " engaged " so used has an occupational connotation and does not refer to an ordinary fare-paying passenger on an isolated flight when not occupationally engaged in aviation or aeronautics. Persuasively, respondent has itself placed such a construction on the language used (1 Couch on Insurance, pp.

330, 331). If we look at the application, which was made part of the policy, and at the policy itself, we find that wherever the word " engaged " is used it is employed to denote an occupation or calling. Where the word " engaged " is used in the exclusion clause with reference to " military or naval service in time of war " or to " submarine operations," it clearly has an occupational significance only. It is hardly to be supposed that the defendant, in writing its policy, would use the word in one sense and with a particular and peculiar meaning in the exclusion clause when relating to aviation and aeronautics and in an entirely different sense and different meaning when relating in the same clause to military and naval service in time of war and to submarine operations and in every other spot in the application and policy in which the word is used. Likewise, as appellant asserts with undeniable force, the average person applying for a policy would no more think of a passenger on an airplane as being engaged in aviation or aeronautics than he would think of a passenger on a railroad train as being engaged in railroading or a passenger on an ocean liner as being engaged in navigation. The use of the words " as a passenger or otherwise " does not necessarily refer to a fare-paying passenger on a private business trip in a commercial plane since it is a well-known fact that persons are frequently passengers on extra-hazardous experimental and test flights as well as on ordinary carefully managed flights that are free from such hazards. Such a reference would be contrary to the occupational idea necessarily inferable from the clause as a whole. It is conceivable that such extra hazards were the things the defendant had in mind. The findings in the case indicate that the defendant revised the wording of its own accidental death benefit riders at least twice after the issuance of the policy in suit for what seems to have been the apparent purpose of clarifying and making more certain the meaning of the words of exclusion. In December of 1932, it made use of this expression: " No Accidental Death Benefit shall be payable if such death resulted * * * from operating, or riding in, any kind of * * * aircraft except as a fare-paying passenger in a licensed aircraft operated by a licensed pilot." In 1935 it changed the expression " in a licensed aircraft operated by a licensed pilot " and further clarified the

meaning of the clause by using the words "fare-paying passenger in a licensèd passenger aircraft provided by an incorporated passenger carrier and operated by a licensed pilot on a regular scheduled flight over a regularly established air-route." The significance of those changes seems to lie in the fact that obscurity in the meaning of the clause used in 1930 required clarification.

It is well-settled that if a policy of insurance is written in such language as to be doubtful or uncertain in its meaning, all ambiguity must be resolved in favor of the policy holder and against the company (*Griffey* v. *New York Central Ins. Co.*, 100 N. Y. 417; *Darrow* v. *Family Fund Society*, 116 N. Y. 537, 544; *Matthews* v. *American Central Ins. Co.*, 154 N. Y. 449, 456; *Janneck* v. *Metropolitan Life Ins. Co.*, 162 N. Y. 574; *Silverstein* v. *Commercial Casualty Ins. Co.*, 237 N. Y. 391). To sustain the construction which the lower courts have placed upon the clause, the burden was on the defendant to establish that the words and expressions used not only are susceptible of that construction but that it is the only construction that can fairly be placed thereon. The argument cannot successfully be made that the words used are free from ambiguity. If we are to give effect to all of the words used in the application and in the policy as a whole as well as in the particular clause being considered in their commonly accepted meaning, we must construe the provision as excluding liability for death resulting to a policy holder engaged in the occupation of aviation or aeronautics, whether death resulted while he was a passenger or whether it resulted while he was so engaged in any capacity. It is not sufficient to warrant exclusion that he was merely a passenger. He must further be engaged in aviation or aeronautics. The word "engaged" means something more than occasional participation as a passenger (Cf. *Peters* v. *Prudential Ins. Co.*, 133 Misc. 780, 782). The obvious ambiguity is emphasized by the ease with which the defendant could have excluded fare-paying passengers upon an isolated flight when not engaged in the occupation or calling of aviation or aeronautics (*Gits* v. *New York Life Ins. Co.*, 32 F. 2d 7). In the *Janneck case* (*supra*), in justification of the rule that any doubtful construction must be resolved in favor of the insured, this court said: " * * * we do not deny the right of an insurance company to make just such a contract as

the defendant claims to have made in the present instance. But insurance contracts, above all others, should be clear and explicit in their terms. They should not be couched in language as to the construction of which lawyers and courts may honestly differ. In a word, they should be so plain and unambiguous that men of average intelligence who invest in these contracts may know and understand their meaning and import '' (p. 577). In *Equitable Life Assur. Society* v. *Dyess* (194 Ark. 1023) the court pertinently said: '' If appellant meant to exclude liability for double indemnity while riding as a passenger or otherwise in any kind of aircraft, why did it not say so in such plain language that a wayfaring man, though a fool, might not be deceived thereby? It would appear a simple thing for a great institution, such as appellant, to write a clause in its policy exempting itself from such liability in plain and simple language.'' The question is simply whether the average man in applying for insurance and reading the language of this policy at the time it was written would ascribe the meaning to that language which the insurance company here urges (*Lewis* v. *Ocean Accident & Guarantee Corp.*, 224 N. Y. 18, 21). We are persuaded that he would not and that he would feel that he was covered by the double indemnity provisions of the policy on an ordinary isolated airplane flight as a fare-paying passenger unless he was engaged at the same time in the business or calling of aviation or aeronautics. It seems clear that the intent of the parties was to protect such a man against '' the risk of casualty.''

A somewhat similar question was presented to this court in *Gibbs* v. *Equitable Life Assur. Society* (256 N. Y. 208, 209), a case principally relied on by defendant in support of its construction of the clause in question. The policy in that case, written in 1924, provided for double indemnity for accidental death unless it should result from '' engaging as a passenger or otherwise in submarine or aeronautic expeditions.'' It was there held that a trip in an airplane was *at the time the policy was issued so novel a thing* as to be thought of by the average individual as an expedition, and the court pointed out that since the technical meaning of the word '' expedition '' is inconsistent with the presence of passengers, that the parties must have had some different meaning in mind when the words '' passenger '' and '' expeditions '' were used together. That case is of little help

to us in determining the present question. There is nothing in the opinion in that case that forecloses consideration of current changes in the common understanding of the ordinary everyday meaning of words and phrases which changing conditions of life over a lapse of time have effected. Such consideration was given by the company itself and changes in meaning clarified and made effective in policies later issued, as we have pointed out above. As pointed out in the *Gibbs* case, in 1924 " a voyage either under the sea or in the air was not customary for the average individual. It was an extraordinary event and was thought to be and was accompanied by unusual hazards " (p. 210). On the contrary, in 1930, a trip by air was not uncommon for the average individual, was neither an extraordinary event nor accompanied by unusual hazards. In this case it has been found that in 1930 there was carried " a total of 417,505 passengers for a total of 103,747,249 passenger air miles (the term ' passenger air mile ' meaning one passenger carried one mile), with a safety record of 4,322,802 passenger air miles flown per passenger fatality " while in 1935 there was carried " a total of 860,761 passengers for a total of 360,569,431 passenger air miles * * * with a safety record of 24,037,962 passenger air miles flown per passenger fatality."

At the close of the entire case both sides moved for judgment. By the provisions of section 584 of the Civil Practice Act, this court is required to render such judgment as the findings warrant (*Wechsler* v. *Bowman*, 285 N. Y. 284, 296).

The judgments should be reversed and judgment directed for the plaintiff in the sum of $50,000, with interest thereon from January 14, 1936, together with costs to the appellant in all courts.

LOUGHRAN, FINCH, LEWIS and CONWAY, JJ., concur; LEHMAN, Ch. J., and DESMOND, J., dissent on the ground that by the clear and unambiguous language of the policy the accident was excluded from the coverage of the " accidental death benefit provisions."

Judgment accordingly. (See 290 N. Y. 744.)