MARY E. LEE, Plaintiff, *v.* GUARDIAN LIFE INSURANCE COMPANY OF AMERICA, Defendant

Supreme Court, Special Term, New York County, January 13, 1944.

*Harold J. Sherman* for plaintiff.

*Francis X. Reilly* and *D. Curtis Robertson* for defendant.

HAMMER, J. Under rule 113 of the Rules of Civil Practice, plaintiff has moved for summary judgment in her favor and defendant has similarly cross-moved seeking a dismissal of the complaint.

In the action, plaintiff, widow and beneficiary under a life insurance policy issued by the defendant insurance company to her deceased husband, sues to recover $10,000 and interest under certain double indemnity provisions of the policy.

The facts have been stipulated in an agreed statement dated August 23, 1943, which is annexed to plaintiff's moving papers.

The facts are as follows: The Guardian Life Insurance Company of America, the defendant, on September 14, 1925, issued its policy of life insurance No. 440729 to Arthur A. Lee, in New York. A photostatic copy thereof is attached to plaintiff's papers. In the policy the. insured's wife, Mary Elizabeth Lee, the plaintiff, is designated as sole beneficiary. The policy was in full force and effect on or about February 22, 1943, when the insured, who had paid his fare and was a passenger for hire in the Pan-American flying boat or airplane, the " Yankee Clipper ", which left La Guardia Airport, New York, on regularly scheduled flight for Lisbon, Portugal, met his death in a crash of that airplane into the Tagos River, Lisbon, Portugal. Death occurred as a result, directly and independently and exclusively of all other causes, of bodily injuries through external, violent and accidental means as defined in the double indemnity provisions of the policy. Therein it was also " provided, however, that this Double Indemnity shall not be payable if the Insured's death resulted from * * * engaging or participating as a passenger or otherwise in aerial navigation or submarine operations or service connected with either."

It is agreed plaintiff and the insured duly performed all conditions by them to be performed and defendant received due notice and proof of death, and also that the insured had no part in, or any connection with, or anything whatsoever to do with, directly or indirectly, the operation, repair, inspection, piloting, maintenance, management or control of the Yankee Clipper airplane on which he rode, or with the transportation of passengers thereon. Defendant paid $10,000, the face amount or single indemnity, and refused to pay double indemnity on the ground it was not within the coverage of that provision.

The defendant's defense and contention is that the insured was engaging or participating as a passenger in aerial naviga-

tion and, as his death resulted therefrom, coverage under the above provision was excluded and double indemnity was not payable.

It is plaintiff's contention that as the insured met his death in the airplane crash when he was passively riding as an ordinary fare-paying passenger on a regular passenger airplane of an established air carrier operating regularly between established airports and was not engaged or participating in the operation, piloting, direction or control of such airplane, the exclusory proviso has no application and defendant is required to pay double indemnity under its agreement.

In considering insurance policies to ascertain the true interpretation to be applied to such provision or provisions as are in controversy, certain cardinal canons of construction which have the approval of authoritative decisions and legal text writers of the highest reputation are applicable. These canons may be stated as follows: Common-law principles controlling the construction of contracts generally are applicable to insurance policies. The intent of the parties as reflected by the language used in their contract, the insurance policy at bar, and the general design, purpose, spirit and reason of such entire contract, are controlling considerations in its interpretation. Accordingly, such insurance policy must be construed as a whole. That is to say, every part of its clauses must be considered, and none of its words should be disregarded as insensible or inoperative if a rational and intelligible meaning can be given to them, consistent with the general design and object of the whole instrument.

Accordingly, confusing or contradictory words or expressions must be harmonized, if reasonably possible, as justice and equity may require, so as to give effect to the main objects and general meaning of the instrument. Toward this end, the meaning of certain words will be deemed controlled by the words or expressions, particular or general, associated with them, and forming part of their context. And whenever justice and equity should make it reasonably necessary, ordinary words will be given a broad, generic or limited, special signification and application. In the process of construction, nouns may be read as adjectives, and vice versa, in the interest of harmonizing the language and meaning of the provisions involved.

The significance of words in a life or accident insurance policy, should be determined in the light of the average man's understanding of plain language or common speech, and not

the understanding of the scientist or savant. Technical words or expressions, or words of art, however, must be given their technical meaning and deemed to have been understood as such by the average man. Insurance policies, when ambiguous and susceptible of two constructions, must be liberally construed in favor of the assured and his dependent beneficiary, so as to sustain, and not defeat, the claim for indemnity thereunder in the interests of substantial justice. And, since insurance policies are invariably drawn by insurance companies, they must be construed most strongly against them, and most liberally in favor of the assured and his dependent beneficiary. (See 29 Am. Jur., Insurance, §§ 156, 160, 166; 32 C. J., Insurance, § 257; 2 Cooley's Briefs on Insurance [2d ed.], pp. 961–963, 981, 994–995, 1004; 3 Williston on Contracts [Rev. ed.], § 618, pp. 1779–1780; § 621, pp. 1788–1789; 1 Restatement, Contracts, §§ 235, 236, pp. 327–328; Broom's Legal Maxims [10th ed.], pp. 389–390, 396–397; *Hartol Products Corp.* v. *Prudential Insurance Co.*, 290 N. Y. 44, and authorities cited.)

Plaintiff argues that giving due regard to such canons in considering the interpretation of the provision in question, here it is clear that the exclusion would apply only if the insured received his injuries and death resulted while he was engaging or participating in the operation of aerial navigation, as the things excluded were aerial navigation operations and submarine operations, the other two terms being used in the context adjectively to limit and refer to that which was excluded, viz., operations.

In *Kansas City Life Ins. Co.* v. *Wells* (133 F. 2d 224, 226–228, affg. *sub nom. Wells* v. *Kansas City Life Ins. Co.*, 46 F. Supp. 754, 757), the United States Circuit Court of Appeals, Eighth Circuit, in its decision of February, 1943, in considering the interpretation of a clause which " provided an exclusion where death was caused ' *from participation in aeronautics or submarine operations* ' ", held the terms " aeronautics " and " submarine " were used adjectively to limit and refer to the word " operations ". In *Gits* v. *New York Life Ins. Co.* (32 F. 2d 7, 9–10) the United States Circuit Court of Appeals, Seventh Circuit, in interpreting an exclusion provision reading " from engaging in submarine or aeronautic operations ", at page 10 stated: " Surely the employment of the word *operations* tends more certainly to indicate an intended continuous and occupational relation."

Funk & Wagnall's New Standard Dictionary (1935 ed., p. 44), in defining the combined words " aerial navigation " states they are " same as AERONAUTICS "; and at page 45 this definition is given: " aeronautics, * * * n. 1. The branch of aerostatics which treats of floating in or navigating the air as in an airship or aeroplane. 2. The art or practise of sailing or floating in the air; ballooning." (See, also, Century Dictionary and Cyclopedia [1911 ed.], p. 94.)

Words and Phrases (Vol. 31, Perm. ed., p. 133) gives this definition: " ' Participate ' means ' to take part in ' and connotes to average person meaning and effect of ' engaged in ' rather than mere presence."

The same authority (Vol. 30, Perm. ed., p. 33) states: " The conjunction ' or ' is frequently used to connect two words expressing the same idea."

And in *People* v. *Bright* (203 N. Y. 73, 78) it was stated: " The phrase ' who engages ' is significant. It means something more than an occasional participation. It imports some continuity or practice * * * habitual participation * * *."

In *Hartol Products Corp.* v. *Prudential Insurance Co.* (290 N. Y. 44, *supra*) the Court of Appeals rendered its decision in March, 1943, upon which plaintiff strongly relies, and in which it is clear in the majority opinion and from the minority dissent that thorough consideration was given to every legal problem presented here. There RIPPEY, J., in the majority opinion, stated (pp. 49-51): " In the *Janneck* case (*supra*), in justification of the rule that any doubtful construction must be resolved in favor of the insured, this court said: ' * *. * we do not deny the right of an insurance company to make just such a contract as the defendant claims to have made in the present instance. But insurance contracts, above all others, should be clear and explicit in their terms. They should not be couched in language as to the construction of which lawyers and courts may honestly differ. In a word, they should be so plain and unambiguous that men of average intelligence who invest in these contracts may know and understand their meaning and import ' (p. 577). In *Equitable Life Assur. Society* v. *Dyess* (194 Ark. 1023) the court pertinently said: ' If appellant meant to exclude liability for double indemnity while riding as a passenger or otherwise in any kind of aircraft, why did it not say so in such plain language that a wayfaring man, though a fool, might not be deceived thereby? It would appear a simple thing for a great institution, such

as appellant, to write a clause in its policy exempting itself from such liability in plain and simple language.' The question is simply whether the average man in applying for insurance and reading the language of this policy at the time it was written would ascribe the meaning to that language which the insurance company here urges (*Lewis* v. *Ocean Accident & Guarantee Corp.*, 224 N. Y. 18, 21). We are persuaded that he would not and that he would feel that he was covered by the double indemnity provisions of the policy on an ordinary isolated airplane flight as a fare-paying passenger unless he was engaged at the same time in the business or calling of aviation or aeronautics. It seems clear that the intent of the parties was to protect such a man against ' the risk of casualty.'

" A somewhat similar question was presented to this court in *Gibbs* v. *Equitable Life Assur. Society* (256 N. Y. 208, 209), a case principally relied on by defendant in support of its construction of the clause in question. The policy in that case, written in 1924, provided for double indemnity for accidental death unless it should result from ' engaging as a passenger or otherwise in submarine or aeronautic expeditions.' It was there held that a trip in an airplane was *at the time the policy was issued so novel a thing* as to be thought of by the average individual as an expedition, and the court pointed out that since the technical meaning of the word ' expedition ' is inconsistent with the presence of passengers, that the parties must have had some different meaning in mind when the words ' passenger ' and ' expeditions ' were used together. * * * As pointed out in the *Gibbs* case, in 1924 ' a voyage either under the sea or in the air was not customary for the average individual. It was an extraordinary event and was thought to be and was accompanied by unusual hazards ' (p. 210)."

But in *Hartol Products Corp.* v. *Prudential Insurance Co.* (290 N. Y. 44, *supra*) at page 47 it was said: " It is unquestionably the rule that ' Contracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used, and if they are clear and unambiguous the terms are to be taken and understood in their plain, ordinary and proper sense ' (*Johnson* v. *Travelers Ins. Co.*, 269 N. Y. 401, 408)."

The language of the clause excluding double indemnity in the *Hartol* case (*supra*) read as follows: " * * * provided, however, no Accidental Death Benefit shall be payable if such death resulted from * * * having been engaged

in * * * submarine operations or in aviation or aeronautics, as a passenger or otherwise * * *."

Several observations are indicated by the foregoing. The *Hartol* case (*supra*) in 1943 interpreted an exclusion clause in a double indemnity provision of a policy written in 1930 in which year it was found that 417,505 passengers had been carried 103,747,249 passenger air miles with a safety record of 24,037,962 passenger air miles flown per passenger fatality, and determined the question in favor of the. insured. But a somewhat similar question was presented in 1931 to the Court of Appeals in *Gibbs* v. *Equitable Life Assurance Society* (256 N. Y. 208, 209), where the policy was written in 1924 and provided for double indemnity for accidental death unless it should result from " engaging as a passenger or otherwise in submarine or aeronautic expeditions ", and the court determined that the death of the insured which occurred in 1929 while a fare-paying passenger in a regularly operated aeroplane, was excluded from coverage.

The Encyclopedia Britannica (Vol. 2, 1942 ed., pp. 804–805) states that in 1924 the world mileage flown by airplanes amounted to 8,764,000 miles and in 1925, the policy in suit having been issued on September 14, 1925, the mileage flown amounted to 13,011,000. Reference to the years 1930 and 1939 shows 69,505,000 miles for the former and 300,000,000 for the latter, which is the last statistic given.

In *Goldsmith* v. *New York Life Ins. Co.* (69 F. 2d 273, 275–276) we find the following: " From the foregoing cases [*Gibbs* v. *Equitable Life Assurance Society*, 256 N. Y. 208; *Head* v. *New York Life Ins. Co.*, 43 F. 2d 517; *First Nat. Bank of Chattanooga* v. *Phoenix Mut. Life Ins. Co.*, 62 F. 2d 681], at least two fairly definite conclusions can be drawn:

" (1) The words, ' participating as a passenger or otherwise in aeronautics or aviation,' ' participating as a passenger or otherwise in aeronautic activity,' or ' participating as a passenger or otherwise in aeronautic expeditions,' cover a passenger in an airplane.

" (2) The words, ' engaged in aviation or aeronautics,' ' engaged in aeronautic operations,' ' engaged in aeronautic activity,' or ' engaged in aeronautic expeditions,' do not cover the ordinary passenger in an airplane.

" While both the word ' participate ' and the word ' engage ' mean, among other things, to take part in, it is held that ' engage ' is ordinarily understood to refer to an occupation or employment or continued activity, so that, in reading a

policy which denied coverage to one engaged in aeronautics, it might properly be construed as not excluding a mere casual passenger in an airplane, but as referring to one who made aeronautics his vocation or took some active part in the operation of the plane. It cannot be denied, however, that one may temporarily engage in taking a short trip or in writing a letter or in casual conversation, so that the meaning or scope of the word ' engaged ' may be made entirely clear by its association with other words.''

But in *Gregory* v. *Mutual Life Ins. Co. of New York* (78 F. 2d 522, 523–524) it is stated: '' Aeronautics is said to be the art of sailing in or navigating the air. It is also defined as ' the science or art of aerial navigation,' and the question is whether one who rides in an airplane as a passenger can be said to be participating in aeronautics within the meaning of the terms of the insurance contracts in question. * * * In *Goldsmith* v. *New York Life Ins. Co.* (C. C. A.) 69 F. (2d) 273, 274, the policy contained the words, ' from engaging, as a passenger or otherwise, in submarine or aeronautic operations,' and this court held, by a divided court, that the insurance company was not liable where the insured was killed while a passenger in an airplane. Many of the decisions are reviewed in Judge SANBORN's opinion in that case, and a further review of them would serve no useful purpose here. In the course of the opinion it is there said: ' While without the words, '' as a passenger or otherwise,'' there would be room for doubt as to the meaning and scope of the expression, '' engaging in aeronautic operations,'' the addition of those words does away with any ambiguity and shows that the phrase, '' engaging as a passenger or otherwise in aeronautic operations,'' is intended to cover one who is temporarily occupied in being a passenger in a plane as well as one who takes an active part in the operation or makes aeronautics his business.'

'' In other words, in that case, the parties to the contract in effect agreed upon the scope to be given to the phrase. Without these explanatory or qualifying words, it cannot be said, in view of the development of the art as an accepted means of passenger transportation, that the language is free from ambiguity or doubt. Nearly a million passengers were carried by airplane last year. Insurance companies know that the public to which they are selling insurance is to a greater or less extent so traveling. These companies either intend to insure against accident resulting from the use of the airplane as a means of transportation, or they do not, and it is only

fair that if they do not intend to include such hazards that it should be made so clear that a person of ordinary intelligence on reading the contract offered will readily understand that such hazard is not covered. The expression, being doubtful and ambiguous, must be construed most strongly against the insurance company. *Wharton* v. *Aetna Life Ins. Co.* (C. C. A. 8) 48 F. (2d) 37; *Gorman* v. *Fidelity & Casualty Co.* (C. C. A. 8) 55 F. (2d) 4; *Northwestern Nat. Life Ins. Co.* v. *Banning* (C. C. A. 8) 63 F. (2d) 736.

" We conclude that the words, ' participation in aeronautics,' as used in these policies, do not, properly construed, include a passenger on a transport airplane, and the lower court was in error in so holding."

While the cases in other States and in Federal courts are of great interest and by force of reasoning greatly persuasive, as we have the two cases in New York (*Gibbs* and *Hartol, supra*) at least one of which seems controlling, especially if both cases are reconcilable or may be differentiated, the decision here should be confined, it would seem, to the exclusive requirements of law as decided in New York.

It is my opinion that the *Gibbs* and *Hartol* cases (*supra*), both of which involved death of a passenger in an airplane crash, are reconcilable and in each the court was considering what idea and intent the parties were expressing when they used the words of exclusion in question in each instance. Stating it otherwise in each case it was found the words used were indemnity, was a submarine or aeronautic expedition if the N. Y. 208, *supra*) the decision was that the idea expressed, and the thing excluded and not covered in the provision for double indemnity, was a submarine or aeronautic expedition if the death of the insured resulted therefrom when he was engaged therein as a passenger or otherwise. It was decided that the evidence established that the death resulted while the deceased was engaged in an aeronautic expedition as a passenger. In the *Hartol* case (290 N. Y. 44, *supra*) the decision was that the language of the application and policy as a whole read with the words of the particular clause being considered were not clear and unambiguous and the words " as a passenger or otherwise " did not necessarily refer to a fare-paying passenger on a private trip in a commercial plane of a passenger carrier flying on regular schedule over a regularly established air route. The word " engaged " means something more than an occasional participation as a paying passenger and connotes " engaged in * * * aviation or aeronautics". The con-

clusion was that the average man applying for the insurance and reading the policy would conclude he was covered by double indemnity under the policy when being transported as a paying passenger by such passenger carrier. It is noted that the eminent judges who dissented did so on the ground (p. 51) "that by the clear and unambiguous language of the policy the accident was excluded from the coverage of the 'accidental death benefit provisions.'"

It is my opinion that, considered with the entire language of the policy, the language used in the exclusion clause is not clear and unambiguous and must be construed favorably to the insured with ambiguity resolved strictly against the defendant insurer. So construed the language used is such that the average person applying for the insurance and reading the policy and clause would feel the exclusion applied to an occupational casualty and that he was insured against the risk of such a casualty as is disclosed here in the agreed facts. Since it is conceded that the insured was an ordinary paid passenger and was not participating in the navigation or operation of the plane, I am convinced plaintiff beneficiary is entitled to recover double indemnity for the casualty stated in the facts here.

Accordingly, plaintiff's motion for summary judgment is granted, with $10 costs, and defendant's cross motion is denied, with $10 costs.

Order signed.