## FARON v. PENN MUT. LIFE INS. CO.
### No. 9711.

United States Court of Appeals
Third Circuit.

Argued Dec. 20, 1948.

Reargued Oct. 10, 1949.

Decided Jan. 31, 1950.

Sherman T. Rock, Pittsburgh, Pa. (Henry P. Hoffstot, Jr., Reed, Smith, Shaw & McClay, Pittsburgh, Pa., on the brief), for appellant.

Sebastian C. Pugliese, Pittsburgh, Pa., for appellee.

Before BIGGS, Chief Judge, and McLAUGHLIN and KALODNER, Circuit Judges.

BIGGS, Chief Judge.

In this case we held, 176 F.2d 290, that New York law governed the rights of the parties under the insurance policy and ordered rehearing to the end that counsel might brief and argue the decisions. This has now been done and we shall dispose of the case on its merits.

The pertinent facts are set out in our earlier opinion and we will avoid repetition here as far as possible. The plaintiff, Faron's widow, seeks to recover double indemnity from the defendant insurance

company on a life insurance policy issued by it to Faron in 1937. The policy provided for the payment of double indemnity on proof "* * * that the death of the insured resulted solely from bodily injuries effected directly and exclusively by external, violent and accidental means * * *". But there was a further provision that double indemnity should not be paid "* * * if the death of the insured resulted directly or indirectly * * * from aeronautic or submarine casualty * * *" Faron was a fare-paying passenger on a regularly scheduled commercial airplane flight when a crash occurred causing his death. The plaintiff is the beneficiary of the policy.

The decision in favor of the plaintiff in the lower court was based largely on the construction of the term "aeronautic" as found in Clapper v. Aetna Life Insurance Co., 81 U.S.App.D.C. 246, 157 F.2d 76. The District Judge found in substance that the word "aeronautic" refers to the science or art of "aerial navigation" and that the death of a passenger in an airplane under the circumstances at bar therefore could not be considered as an "aeronautic" casualty. See D.C., 77 F.Supp. 228, 230-231. The defendant contends that the insured did meet his death as the result of an "aeronautic casualty".

Among the pertinent New York decisions is Hartol Products Corp. v. Prudential Ins. Co., (1942) 290 N.Y. 44, 47 N.E. 2d 687, 689, in effect reversing the decision in Gibbs v. Equitable Life Assur. Soc. of United States, 256 N.Y. 208, 176 N.E. 144. The policy involved in the Hartol case contained the following language: "* * * No Accidental Death Benefit shall be payable if such death resulted * * * from having been *engaged in* military or naval service in time of war; or in submarine operations or in *aviation or aeronautics,*[1] as a passenger or otherwise; * * *" The insured was killed while riding as a fare-paying passenger on a regularly scheduled flight in a commercial aircraft. In ruling that the beneficiary could recover double indem-

nity the Court of Appeals of New York laid emphasis on the phrase "engaged in" as used in the policy. Judge Rippey stated: "It is not sufficient to warrant exclusion that he was merely a passenger. He must further be engaged in aviation or aeronautics. The word "engaged" means something more than occasional participation as a passenger". The court did not define the terms "aviation" or "aeronautics".

The Hartol decision was followed by the *Supreme Court, New York County,* in Lee v. Guardian Life Ins. Co. of America, 1944, 187 Misc. 221, 46 N.Y.S.2d 241, 243, affirmed 267 App.Div. 985, 48 N.Y.S.2d 800, leave to appeal denied 268 App.Div. 849, 50 N.Y.S.2d 674. The policy in that case provided that double indemnity would not be paid if death "resulted from * * * *engaging* or *participating* as a passenger or otherwise in aerial navigation or submarine operations or service connected with either." Recovery was allowed. Part of the opinion, 187 Misc. 221, 46 N.Y.S. 2d at pages 245-247, is devoted to definitions, including one of the combined words "aerial navigation". It was the view of Justice Hammer, quoting Funk & Wagnall's New Standard Dictionary, Vol. 1, pp. 44 and 45 (1935 Ed.), that "aerial navigation" is the "same as aeronautics" and is "aeronautics". The court held that a fare-paying passenger using a plane as means of transportation did not "participate in aerial navigation as a passenger or otherwise."

Next came Funk v. New York Life Ins. Co., 1946, 186 Misc. 449, 60 N.Y.S.2d 349, 350, also decided by the Supreme Court, New York County, on policies which provided that "Double indemnity shall not be payable if the insured's death resulted from * * * *engaging* in riot or insurrection; from *participation* as a passenger or otherwise in aviation or aeronautics * * *". The Court stated: "The narrow issue of law * * * is whether, within the meaning of the policies, the insured was a participant as a passenger or otherwise in aviation or aeronautics",

---

1. Emphasis added throughout this opinion.

and held that recovery was not precluded by the language of the policies which we have quoted. Justice Shientag said in respect to Justice Hammer's decision in the Lee case that "The court held that a fare-paying passenger using a plane as a means of transportation did not 'participate' in aerial navigation as a passenger or otherwise." Justice Shientag also stated, "There would seem to be no distinction between 'aerial navigation' and 'aviation' or 'aeronautics'. Aeronautics is the science which deals with the operation of aircraft; and aviation deals with the science of flying." See 146 Misc. 449, 60 N.Y.S.2d at pages 350-351.

Faron's policy does not contain the words "participation" or "participate" or the phrase "engaged in" and, therefore, the case at bar can be distinguished from the Hartol, Lee and Funk decisions. It will be observed that the New York courts in the Lee and Funk decisions held the terms "aeronautics" or "aviation" to be the equivalent of "aerial navigation". We accept this definition since we must apply the law of New York. The word "casualty" means "chance" or "accident". Webster's New International Dictionary, 2d Ed. (1937). If we rephrase the exclusion clause of Faron's policy in accordance with these definitions the clause reads that double indemnity shall not be paid " * * * if the death of the insured resulted * * * from an *aerial navigation accident*". "Aerial navigation" is commonly defined as the " * * * 3. Science or art of conducting airplanes, etc., from place to place, esp. through the use of calculations as to position and direction, etc." Webster's Dictionary, supra. In short, "aerial navigation" means conducting an airplane flight. Faron was killed in the course of a flight and his death therefore resulted from an *aerial navigation* accident. He was a passenger but the exclusion clause was not conditioned on his being such or on his *participation* or *engagement in* the flight. The accident in which Faron was killed was literally within the terms of the exclusion clause of the policy.

But as was said in the Funk case " * * * a policy of life insurance should be so worded as to be understood, not by a savant or rhetorician, but by a person of ordinary business intelligence." To bring Faron within the literal language of the exclusion clause requires, as we have demonstrated, definition and redefinition of the terms of that clause and even then the result is very far from clear. We doubt if any person possessed of ordinary business intelligence on reading the exclusion clause would conclude that the beneficiary of a fare-paying passenger killed during the course of a scheduled commercial flight was intended to be excluded from the coverage of the policy or that Faron's death resulted from "aeronautic casualty". The phrase "aeronautic casualty" would be presumed by a person of ordinary business intelligence to embrace only casualties resulting from flights experimental, exploratory or adventurous. Riding as a passenger in a commercial airliner is no one of these.

If under the definition of the courts of New York, the phrase "aerial navigation" be substituted for the term "aeronautic", a man of ordinary business intelligence would not deem a fare-paying passenger killed on a scheduled flight on a commercial airliner to be a "casualty" within the terms of the exclusion clause. Cf. the Clapper case. The man of ordinary business intelligence would, we think, consider the phrase "aerial navigation" as descriptive only of the process of conducting an aircraft from place to place. This indeed is one of the dictionary definitions of the term. If the accident had occurred because of a failure of the pilot of Faron's aircraft to estimate properly his position on his flight map, the man of ordinary business intelligence might perhaps consider Faron to have been a victim of aerial navigation. No such showing was made and the record does not disclose why the aircraft fell. The subject is further confused by the use of the adjective "submarine" in the exclusion clause. It will be agreed, we think, that ordinarily no passenger, fare-paying or otherwise, is carried on a submarine.

We must construe the exclusion clause of the policy as would the courts

of New York. We conclude that those courts would permit Mrs. Faron to recover, holding that a man of ordinary business intelligence would not deem Faron to have been within the exclusion clause.

Accordingly, the judgment of the court below will be affirmed.